STATE EX REL. HOLMES, Appellant, V. SPICE, Sheriff, Respondent.

*Nos. 452, 453. Argued January 7, 1975.—Decided May 6, 1975.*
(Also reported in 229 N. W. 2d 97.)

264

For the appellant there was a brief by *John M. Leonard*, Outagamie county public defender, and *Howard B. Eisenberg*, state public defender, and oral argument by *Mr. Leonard*.

For the respondent there was a brief by *Robert W. Warren*, attorney general, and *Robert D. Martinson*, assistant attorney general, and oral argument by *Michael R. Klos*, assistant attorney general.

DAY, J. These cases are appeals challenging the validity of extradition proceedings commenced to authorize appellant Carl B. Holmes' rendition from the state of Wisconsin to the state of Montana, pursuant to the Uniform Criminal Extradition Act, sec. 976.03, Stats. The first of the proceedings was commenced in the county court of Outagamie county by the filing of a petition for habeas corpus on November 9, 1973, and another on December 7, 1973 (Case No. 453). The order of the county court denying the petitions was entered December 7, 1973. The second proceeding was commenced by the filing of a petition for habeas corpus in the circuit court for Outagamie county on December 8, 1973. The order of the circuit court denying the application made to it was entered December 10, 1973.

On November 9, 1973, an officer of the Appleton police department reported that he had observed an automobile with Montana license plates illegally parked at the same parking space two days in a row. The car had a meter violation ticket on the windshield. The officer radioed for a check of the license through the National Crime Information Center, which revealed the owner was wanted for a Montana parole violation and for questioning in a Montana homicide investigation. The issuing agency of this report was said to be Great Falls, Montana.

The Appleton police then sent a teletype message to the police in Great Falls, Montana, to determine if the

owner was still wanted there. The reply message was sent by the chief of police, Great Falls police department, and stated that the individual, identified as Carl Benson Holmes, was still wanted for a parole violation on the orders of a named parole officer, and that Holmes should be picked up and held. The message stated the Montana attorney general's office would contact the Appleton police department later the same day about extradition and it supplied a description of Mr. Holmes.

Two officers went to a hotel where Mr. Holmes was thought to be residing. There they picked up appellant in his room. He was registered under the name of "Carl Holmes."

That same morning, November 9, 1973, one of the officers spoke to appellant and appellant informed him that the parole violation was only a matter of a simple mistake in addresses. Appellant also mentioned he might be questioned about a homicide.

These facts were elicited at a hearing conducted on November 9th in Outagamie county court before Judge NICK F. SCHAEFER. The assistant district attorney also stated that he had called an assistant county attorney for Cascade county, Montana, and was informed Carl Benson Holmes was wanted as an absconded parole violator and for questioning in connection with a homicide investigation. Appellant Holmes was also at this hearing but was without counsel. Appellant refused to identify himself and stated he was on probation, not parole, and that there had been no violation. He said the problem was only a mix-up on addresses. Appellant requested he be allowed to file a writ of habeas corpus that he apparently had prepared. The court stated that consideration would be given to it later. Holmes was found indigent and counsel appointed for him. The assistant district attorney requested that Holmes be retained in custody under sec. 976.03 (15), Stats.,[1] of the Uniform Criminal Extradi-

[1] "976.03 Uniform criminal extradition act. . . .

tion Act, for a reasonable period not to exceed thirty days to permit extradition proceedings. This request was granted.

On November 9, 1973, counsel appointed for appellant argued that there was no basis on which to make a warrantless arrest under sec. 976.03 (14), Stats.[2] The court upheld the appellant's detention under the statute.

Following the hearing there was sent from Cascade county, Montana, a certified order to show cause why appellant's suspended sentence should not be revoked, which was made returnable December 7, 1973; a certified but unsworn petition for revocation of suspended sentence signed by the deputy county attorney for Cascade county, Montana, setting out facts allegedly constituting the suspended sentence violation; and a certified arrest warrant issued by the district court for Cascade county, Montana, commanding the arrest of Carl Benson Holmes for violation of the terms of his suspended sentence.

"(15) COMMITMENT TO AWAIT REQUISITION; BAIL. If from the examination before the judge it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising under sub. (6), that he has fled from justice, the judge must, by a warrant reciting the accusation, commit him to the county jail for such a time not exceeding 30 days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail as provided in sub. (16), or until he shall be legally discharged."

[2] "976.03 Uniform criminal extradition act. . . .

"(14) ARREST WITHOUT A WARRANT. The arrest of a person may be lawfully made also by an officer or a private citizen without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year; but when so arrested the accused must be taken before a judge with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in sub. (13); and thereafter his answer shall be heard as if he had been arrested on a warrant."

Another hearing was held before the county court on November 23, 1973, and here the issue of appellant's initial writ of habeas corpus challenging the validity of his arrest and detention was considered. At this time no warrant for his extradition had been issued by the governor of Wisconsin. The trial court denied the writ and ordered the appellant held for further proceedings.

On December 4, 1973, the governor of Wisconsin's extradition warrant was issued after receipt of the governor of Montana's requisition order and supporting documents. On December 6th another hearing was held before the county court. Appellant's counsel did not arrive at the scheduled time; the court adjourned the matter for a half hour, and after eight minutes he had still not made an appearance. In the meantime the record would indicate that the appellant had been removed from the courtroom because of his obstreperous conduct and the court found the necessary documents to be in order and ordered extradition pending notice to Judge Myse of the circuit court. A hearing in county court was held on December 7th where counsel brought a new writ of habeas corpus and a motion to stay execution of the rendition order; both were denied. The issues raised at the hearing, to wit: Probable cause for arrest, alleged requirement for a preliminary-type hearing on probation revocation and the sufficiency of the documents on which the governor's rendition order was based, are discussed in this opinion. The following day, December 8th, the circuit court habeas corpus was filed. This did not challenge the appellant's arrest but went to only the issue of the sufficiency of the papers filed by the state of Montana upon which the Wisconsin governor's December 4th rendition warrant was based. These documents are a part of the record. The hearing considered the circuit court's jurisdiction to hear the arguments on the writ and on December 10th those arguments were heard and the writ was denied.

The law is clear that we are restricted to examining the validity of the appellant's detention following the issuance of the extradition warrant by the governor of Wisconsin. This has been the law since the case of *Stallings v. Splain* (1920), 253 U. S. 339, 343, 40 Sup. Ct. 537, 64 L. Ed. 940. In that case Mr. Justice BRANDEIS said:

"On the other hand, if the original arrest and detention had been illegal, Stallings would not be entitled to his discharge, if before final hearing in the *habeas corpus* proceedings legal cause for detaining him had arisen through the institution of removal proceedings. Where it appears that sufficient ground for detention exists a prisoner will not be discharged for defects in the original arrest or commitment."

In *Stallings*, habeas corpus was filed for immediately upon arrest, well in advance of the "institution of removal proceedings." The principle enunciated in *Stallings* has also been expressed by this court in *State ex rel. Keehn v. Capelle* (1962), 17 Wis. 2d 116, 115 N. W. 2d 487. In *Keehn*, an argument was made following the rendition of the governor's warrant here in Wisconsin that the initial arrest had been illegal. This court in denying the writ quoted with approval from 35 C. J. S., *Extradition*, p. 402, sec. 12 c:

"A fugitive from justice from another state cannot urge, in opposition to proper extradition proceedings, the fact that his original arrest or detention was illegal. Once proper proceedings have been instituted, it is too late to claim that the preliminary detention was illegal."

While it is true that in *Keehn* habeas corpus was not issued until after the governor's warrant, the cases are clear that *when* a habeas corpus is issued with respect to a valid governor's warrant is not the test. In the case of *Lott v. Heyd* (5th Cir. 1963), 315 Fed. 2d 350, 351, the court noted that the United States Constitution mandates

expeditious extradition.[3] The court there said that an asylum state's misbehavior cannot deprive the demanding state of its right to the fugitive upon presentation of the proper extradition papers, because to do so would amount to allowing the asylum state to amend the constitution.

The holding in *Stallings* that no discharge from custody is warranted for an illegal initial arrest and detention where the challenge to the validity of that detention is not finally heard and denied until after proper extradition proceedings have been formally instituted, by means of the issuance of the governor's warrant of extradition, is well-settled law. *Bailey v. State* (1973), 260 Ind. 448, 296 N. E. 2d 422, 424; *State ex rel. Brown v. Hedman* (1968), 280 Minn. 69, 157 N. W. 2d 756, 757, 758; *People ex rel. Gummow v. Larson* (1966), 35 Ill. 2d 280, 220 N. E. 2d 165, 167; *Applications of Oppenheimer* (1964), 95 Ariz. 292, 389 Pac. 2d 696, 700, certiorari denied, 377 U. S. 948, 84 Sup. Ct. 1359, 12 L. Ed. 2d 311; *Travis v. People* (1957), 135 Colo. 141, 308 Pac. 2d 997. If a rendition warrant has been properly executed, the accused is properly in custody and cannot be discharged for defects which may have occurred in earlier, preliminary proceedings. This is consistent with the recent Nebraska case of *Bell v. Janing* (1972), 188 Neb. 690, 199 N. W. 2d 24, where it was held that the illegality of a prisoner's custody prior to the issuance of a rendition warrant from a sister state does not render the warrant void and unenforceable.

We hold, therefore, that the appellant's writ of habeas corpus in the county court on December 7th attacking the initial arrest and subsequent detention pursuant

[3] U. S. Const., art. IV, sec. 2, cl. 2:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

thereto was properly quashed. The writ in the circuit court attacked the validity of the governor's extradition warrant.

Such a warrant enjoys a prima facie presumption of legality and regularity. *State ex rel. Foster v. Uttech* (1966), 31 Wis. 2d 664, 668, 143 N. W. 2d 500; *Munsey v. Clough* (1905), 196 U. S. 364, 372, 25 Sup. Ct. 282, 49 L. Ed. 515.

The contention of the appellant appears to be that the documents from Montana which were sent to the governor of Wisconsin were ambiguous and would probably mislead the governor of Wisconsin into the erroneous assumption that there is a felony charge pending against the appellant. Judge MYSE of the circuit court dismissed this argument; he noted that the governor of Wisconsin had several documents from Montana upon which to base his decision to extradite and that, taken together, these indicate quite clearly that the appellant had been convicted of grand larceny and was now being sought for a violation of the terms of the suspended sentence he received for that offense. We are satisfied that the governor of Wisconsin was in no way misled by the documents from Montana, as is plain from his rendition warrant which states that the warrant is issued on the basis of a demand from the executive authority of Montana which in turn is accompanied by "A copy of an Information and Warrant convicting him of the crime of grand larceny and an Order to Show Cause and Petition for Revocation of Suspended Sentence charging him with violating the terms of his suspended sentence." The warrant was issued, presumably, after examination of the various documents submitted by the state of Montana. An examination of those documents makes it eminently clear that Holmes had already been convicted of grand larceny and that he has been given a suspended sentence and that it was for violation of the terms of the suspended sentence that he is wanted in the demanding state. It

seems clear what the Montana claim is and that the governor of Wisconsin understood it to be such in issuing his warrant. The appellant's contention that the governor's warrant must fail because the statute requires that it be based on an affidavit made before a magistrate is without merit. That is not the requirement. The statute enunciating the required form of demand for requisition states that in the case of escape from confinement or a violation of the terms of parole, probation, or bail, the only necessary papers are, according to sec. 976.03 (3), Stats.:

". . . a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has . . . broken the terms of his . . . probation . . . ."

A certified copy of the imposition of a suspended sentence upon receipt of Holmes' plea of guilty to the grand larceny charge is part of the record. Appellant makes the additional argument that the term "suspended sentence" is not used in the Uniform Criminal Extradition Act and that nothing in the record indicates that suspended sentence is the same as parole or probation. It is true that that term is not in the statute but it is not correct that we have no indication that suspended sentence qualifies as parole or probation. The Montana court's order for suspension of sentence explicitly states that Holmes would be placed on probation during his suspended sentence. Further, it is to be noted that the appellant himself stated at a hearing below that he was being sought for violation of probation.

The appellant also contends that the documents from Montana presented to the governor of Wisconsin, upon which the governor's warrant was issued, are insufficient under the Uniform Criminal Extradition Act and the standards set down by this court in *State ex rel. Foster*

*v. Uttech, supra.* Our court stated that the fourth amendment [4] guarantees are applicable to a governor's extradition warrant "at least where constitutional standards are shown not to have been complied with on the face of the documents," at page 671. As to the adequacy of the arrest warrant, we note that it states on its face that it is issued after the filing of the petition for revocation of suspended sentence. The order to show cause why the suspended sentence should not be revoked by the same judge states that it was executed only after "reading and filing" of the same petition. The petition for revocation of suspended sentence sets out the facts allegedly underlying the appellant's probation or suspended sentence violation in sufficient detail to meet the requirements that this court set forth in *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 137 N. W. 2d 391, also cited in *Uttech.* The argument of the appellant that the petition must be made before the magistrate who issues the warrant is without foundation. Sec. 976.03 (3), Stats., provides only that there be ". . . a copy of a judgment of conviction or of a sentence imposed in execution thereof, . . ." In *Uttech,* where an affidavit was required, the charge was the offense of robbery. In the instant case, no affidavit is required. The petition in this case while being certified as a true and correct copy of the original is not sworn to by the deputy county attorney. However, this petition comprises a portion of the packet of documents which constitute the application for requisition. On the final page of that packet of documents the Montana county attorney has sworn he knows the contents of the application and that the same is true to his

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

own knowledge. We, therefore, conclude that the documents in question are supported by "Oath or affirmation" as required by the fourth amendment.

Appellant further contends that he was denied due process of law and that he was not afforded a preliminary hearing as to whether or not he had in fact violated the terms of his suspended sentence or probation. We consider this contention is without merit.

The appellant cites *Morrissey v. Brewer* (1972), 408 U. S. 471, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, and *Gagnon v. Scarpelli* (1973), 411 U. S. 778, 93 Sup. Ct. 1756, 36 L. Ed. 2d 656. The first case involved a revocation of parole and the second a revocation of probation. Both cases are authority for the proposition that there must be a determination of whether there is probable cause to believe the accused had violated the terms of his probation or parole. Neither case is authority that such a hearing must be held in the asylum state when the alleged violation took place in the demanding state, such as is involved in the instant case. The only place that this hearing could be properly held would be in Montana.

The court said in *Morrissey,* at page 485, that the first-level preliminary revocation hearing should occur "at or reasonably near the place of the alleged . . . violation or arrest." We agree with *Wortham v. State* (Alaska, 1974), 519 Pac. 2d 797, 800, and

". . . do not anticipate that the preliminary hearing will be unduly cumbersome. In the vast majority of cases, a verified statement setting forth the facts of the alleged parole violation, together with the other necessary documents, will be all that is required."

This is especially so in light of the statutory requirement that the guilt or innocence of the accused is not to be inquired into by the asylum state. Sec. 976.03 (20), Stats. We conclude that here, as in *Wortham,* the papers from the demanding state have set forth sufficient verified

facts to comply with the *Morrissey/Scarpelli* requirements.

Appellant's contention that he has never been identified as Carl Benson Holmes, named in the Montana papers, is without merit. This court has specifically taken the position that identity of names will be accepted as prima facie identity of persons. *Block v. State* (1968), 41 Wis. 2d 205, 208, 209, 163 N. W. 2d 196. In the instant case the appellant was initially arrested where he was found registered in a hotel under the name of Carl Holmes. He admits he is the owner of a car registered in that name; he signed numerous papers as Carl Holmes and his counsel admitted at oral argument that he now uses the name of Carl Holmes.

We have examined the other issues raised by the appellant and consider them to be without merit. The order of the county court of Outagamie county dated December 7, 1973, and the order of the circuit court for Outagamie county dated December 10, 1973, both of which authorized extradition of the defendant are affirmed.

*By the Court.*—Orders affirmed.