STATE EX REL. CLAYTON, Appellant, v. WOLKE, Sheriff, Respondent.

*No. 651. Submitted June 2, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 869.)

For the appellant the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

DAY, J. The question on this appeal is did the documents submitted by the governor of Louisiana for the extradition of Mr. Clayton sufficiently comply with the Uniform Criminal Extradition Act so that the governor of Wisconsin could recognize the demand for extradition. We conclude that such documents met the requirements of the act.

The second question is whether or not the documents submitted and the evidence produced at the habeas corpus hearing established that Mr. Clayton was the person sought in the extradition request. We conclude that the identity was sufficiently established.

On June 17, 1974, the governor of Louisiana signed a demand for the extradition of Edward Clayton (hereinafter "petitioner"), from Wisconsin to Louisiana on the basis that the petitioner was "charged with the crime of escape after having been convicted and sentenced for the crime of simple escape (armed robbery) . . . ."

Several documents accompanied the demand and in the demand were stated to be "annexed" to it.[1]

---

[1] The following documents were annexed to the demand: (1) A fugitive warrant from the warden of the Louisiana state penitentiary dated June 6, 1974, which states that petitioner had escaped the penitentiary and fled to another jurisdiction without serving out his full sentence. (2) A petition from the attorney general of Louisiana dated June 14, 1974, requesting a warrant for the extradition of petitioner. (3) A set of photographs and

The governor of Wisconsin, after considering these documents, issued his warrant for the extradition of petitioner on July 8, 1974. The petitioner was arrested in Milwaukee on July 11, 1974.

The hearing on the governor's extradition warrant was held July 15, 1974. On that date the petitioner also filed his petition for a writ of habeas corpus. The petitioner alleged in his petition that the documents submitted by the governor of Louisiana did not meet the statutory requirements of the Uniform Criminal Extradition Act, and that his name is not the same as that of the person named in the Louisiana documents because his name is Edward Clayton and the demand was for Eddie Clayton. At the hearing, testimony was introduced as to petitioner's identity which will be discussed in this opinion.

The question of sufficiency of documents submitted by a demanding state in support of its request for extradition is entirely controlled by sec. 3 of the Uniform Criminal Extradition Act, codified in Wisconsin as sec. 976.03 (3), Stats.:

"FORM OF DEMAND. No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under sub. (6), that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he

---

fingerprints of the petitioner. (4) An order dated May 22, 1972, committing petitioner to the penitentiary for five years for the crime of simple escape. (5) An extract from the minutes of court setting out petitioner's guilty plea to the charge of simple escape, which was entered May 19, 1972. (6) An information dated February 29, 1972, charging petitioner with the crime of simple escape committed on or about January 20, 1972. (7) A document dated September 21, 1970, which is very apparently the judgment or order imposing a ten-year sentence on the petitioner for the crime of armed robbery. (8) A document which appears to be dated May 6, 1971, which states the facts underlying petitioner's 1970 plea of guilty to and his ten-year sentence for armed robbery.

fled from the state, and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon; *or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole.* The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence *must be authenticated by the executive authority making the demand."* (Emphasis added.)

The statute makes it clear that there are different documents necessary to support extradition of one charged with a crime as contrasted with one who is claimed to have escaped from confinement or broken the terms of bail, probation, or parole. This difference was recognized in *State ex rel. Holmes v. Spice* (1975), 68 Wis. 2d 263, 272, 229 N. W. 2d 97.

In the Louisiana governor's request for extradition, it states:

"Whereas, it appears from the papers required by the Statutes of the United States which are hereunto annexed and which I certify to be authentic and duly authenticated in accordance with the Laws of this State that Eddie Clayton stands charged with the crime of Escape after having been convicted and sentenced for the crime of Simple Escape (Armed Robbery) which I certify to be a crime under the Laws of this State . . . ."

However, it is clear that the petitioner is not charged with the crime of escape. He was first imprisoned for armed robbery, escaped, was caught and convicted of simple escape, and was reimprisoned. He then escaped a second time and is now wanted by Louisiana to be re-

turned to prison. The record does not show that he has been again formally charged with the crime of escape. The request for extradition of the petitioner is on the basis of his two convictions—armed robbery on September 21, 1970, for which he received ten years; and simple escape on May 19, 1972, for which he received five years. He has not yet finished serving his sentence. This is made clear from the supporting documents accompanying and annexed to the Louisiana governor's request for extradition.

The situation before us is directly analogous to that in *Austin v. Brumbaugh* (1971), 186 Neb. 815, 817, 186 N. W. 2d 723. In that case the request for extradition from the governor of Michigan to the governor of Nebraska stated:

" 'It appears by Application and Papers in Support Thereof which are hereunto annexed, and which I certify to be authentic and duly authenticated, in accordance with the laws of this State, that Gregory Austin stands charged with the crime of Parole Violation (Uttering and Publishing) which I certify to be a crime under the laws of this State, . . .' "

In *Austin*, the petitioner argued that the words "parole violation (uttering and publishing)" did not constitute a crime under the laws of Michigan. The Nebraska Supreme Court noted that "No doubt such words would be insufficient in an information or complaint" (p. 817). However, the court examined the papers which were, as the papers are here (1) attached to, (2) accompanying, (3) expressly annexed to, and (4) authenticated by the extradition request by the governor of the demanding state. From these papers, it was clear that Austin was already convicted and sentenced for uttering and publishing a forged check and was being extradited for violating his parole under that sentence by leaving the state without permission. The Nebraska court held that (p. 819):

". . . the requisition in an extradition proceeding may refer to accompanying papers and if together they meet statutory requirements that is sufficient."

On this basis, the Nebraska court found that the Michigan governor's extradition request, though it literally charged the commission of a crime, was sufficient compliance with the statutory requirement of a statement from the executive authority that the terms of parole had been violated.

In the case before us the Louisiana governor's extradition request, though apparently charging the commission of a crime, when it is read with the papers annexed to it and authenticated by it, complies with the statutory requirement that there be a statement from the demanding state executive authority that the person sought to be extradited has in fact escaped from confinement. This court recently approved looking at all documents in the demand to determine statutory sufficiency, *State ex rel. Holmes v. Spice, supra,* page 271. We conclude that the necessary statement from the executive authority is present here. The second document required is also present in the form of judgments of conviction and sentence for both the armed robbery and the simple escape convictions.

Petitioner argues, however, that these latter documents are not properly authenticated as required by the statute. The statute requires only that the "judgment of conviction or sentence must be authenticated by the executive authority making the demand." Sec. 976.03 (3), Stats.

This requirement is expressly supplied by the governor of Louisiana in his formal request for petitioner's extradition wherein he states that he does "certify" the papers which are "hereunto annexed" to be "authentic and duly authenticated in accordance with the Laws of this State . . . ." We conclude that this satisfies the statutory requirement. There are cases in other jurisdictions which support this view. In *Birmingham v. Larson* (1971), 26

Utah 2d 414, 416, 490 Pac. 2d 893, 894, the request for extradition was from the governor of Louisiana and recited precisely the same language as Louisiana used in the present case, and it was held that "This is a sufficient compliance with the law as to the authentication." In *People v. Jackson* (1972), 180 Colo. 135, 502 Pac. 2d 1106, it was also held that the personal certification of authenticity by the demanding state governor was enough. *See generally:* 31 Am. Jur. 2d, *Extradition*, p. 952, sec. 41; 35 C. J. S., *Extradition*, pp. 415–417, sec. 14 (5).

In *Burnette v. McClearn* (1967), 162 Colo. 503, 505, 427 Pac. 2d 331, the defendant was sought by North Carolina as an escapee of a state prison. The critical supporting paper—the judgment of conviction—was not signed; rather, the names of the judge and clerk were typed in. The Colorado court said that this did not matter. The copies necessary to accompany the demand need not be verified, certified, nor photocopied; a typewritten copy satisfies the language of the law. The court concluded that:

"The question of authenticity is one for the determination of the governor of the demanding state, and his certification of that fact is all that is required."

The generally accepted rule on this point is found in *Lyle v. Kieback* (1959), 139 Colo. 149, 151, 337 Pac. 2d 392, quoting from *Travis v. People* (1957), 135 Colo. 141, 308 Pac. 2d 997:

" 'There is no contention that any of the documents "certified as authentic" by the Governor of Kansas are spurious. In the absence of such a showing the certification by the Governor is sufficient. State v. Remann, 165 Wash. 92, 4 P. (2d) 866. See, also, 78 A. L. R. 412 and the annotation to the Remann case.' "

An extradition request using obviously less precise and persuasive language than that in the present case was held to have sufficiently authenticated the supporting

papers in *Mays v. Shields* (1968), 251 Ore. 168, 170, 444 Pac. 2d 949, 950:

"The request for extradition recites that 'it appears by the annexed papers duly authenticated in accordance with the laws of this state' that plaintiff was charged with the described crime. We regard this as an authentication of the supporting papers by the governor of Wyoming. The recital is to be interpreted to mean that since the governor regards the papers as 'duly authenticated' he himself authenticated them and we hold therefore that the papers were authenticated as required by the statute."

In this case the petitioner is not being extradited because he is presently charged with a crime. He escaped confinement, and the judgment of conviction for the crime for which he was incarcerated when he escaped is a necessary document to establish the escape. It is necessary to prove incarceration to prove escape from it, and the Louisiana governor's authentication reaches all the papers bearing on the matter of petitioner's escape and, therefore, reaches the judgment of conviction. We conclude that the documentation presented by the governor of Louisiana to the governor of Wisconsin complies with the requirements of the Uniform Criminal Extradition Act.

The next question is whether the documents produced by the state of Louisiana and the evidence adduced at the habeas corpus hearings sufficiently establish that the petitioner is the individual sought in the extradition request.

Petitioner's main argument in this respect is that the papers from Louisiana referred to "Eddie Clayton;" whereas he is, in fact, Edward Clayton, and the claim is made that it has not been proven that they are one and the same person.

The issuance of the warrant of arrest by the governor of the asylum state raises a presumption that the ac-

cused was the person sought by the demanding state, and the burden of proof then rests upon the petitioner to overcome this presumption by clear and convincing evidence. *United States v. Flood* (2d Cir. 1967), 374 Fed. 2d 554, 557. For state cases, *see* Annot. (1964), *Necessity and sufficiency of identification of accused as the person charged, to warrant extradition,* 93 A. L. R. 2d 912, 928, sec. 10. The governor's warrant has been issued in this case, and petitioner has not overcome the presumption raised thereby.

At the habeas corpus hearing, Deputy Sheriff Consiglio testified that he arrested the petitioner on July 11, 1974. He had first gone to 1848 North 24th Place, the residence of petitioner's wife. He asked her where Eddie Clayton was, and she indicated he was in the bedroom. When the deputy knocked on the door and told Clayton he wanted to talk with him, the door was locked and no answer was given. He testified that the petitioner jumped out the window and ran down the street, and his partner, who was at the back door, chased him. They then went to 2130 North 26th Street. Two women were on the porch, and the officers told them they wanted to see Eddie Clayton. One of the women went inside and held the door shut but then let the deputy in; but by this time Clayton had run out the back door and was apprehended by Deputy Consiglio's partner. Mr. Consiglio also testified he had arrested the petitioner on two other occasions and that at one time when he was filling out a document he asked the petitioner whether he should use Eddie or Edward and was advised by the petitioner that he used both names.

The testimony of Deputy Consiglio is sufficient evidence to prove that the petitioner, Edward Clayton, also used the name Eddie. As this court has said, ". . . identity of names will be accepted as prima facie identity of persons." *State ex rel. Holmes v. Spice, supra,* at

page 275; *Block v. State* (1968), 41 Wis. 2d 205, 208, 209, 163 N. W. 2d 196.

A fingerprint identification expert from the sheriff's department of Milwaukee county testified he had compared the prints taken of the petitioner in Milwaukee with those taken in Louisiana of the Eddie Clayton whose extradition was sought. He stated in his opinion, to a reasonable degree of scientific certainty, the two sets of prints belonged to the same person.

The challenge to the fingerprints by the petitioner derives from an obvious typographical error on the fingerprint card that was sent up with the documents from Louisiana. That card states that the date of arrest was May 24, 1972. It is clear from other papers that the petitioner had already been apprehended, convicted, and reimprisoned for simple escape on May 24, 1972. The documents show that he was committed to the state penitentiary on May 24, 1972, and it is obvious that the date on the card is the date of his commitment, not of his arrest. It is obvious that this is a typographical error and, as a basis for objection to the governor's warrant, is without merit.

We conclude that the documentation sent by the governor of Louisiana to the governor of Wisconsin complied with the statute and that the identification of the petitioner as the person wanted in Louisiana is sufficiently established by the evidence in this case.

*By the Court.*—Order affirmed.