RICKY LYNN FAIN v. DAVID BOURBEAU
(11868)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued February 7—decision released March 12, 1985

C. *Robert Satti,* state's attorney, with whom was *Michael L. Regan,* assistant state's attorney, for the appellant (respondent).

*Angelo L. dos Santos,* with whom was *Ronald L. Lepine,* for the appellee (petitioner).

PETERS, C. J. The principal issue in this case is whether a fugitive may resist extradition by challenging the authentication of rendition documents when their authenticity has been certified by the governor of the state demanding his return. The petitioner, Ricky Lynn Fain, filed a petition for a writ of habeas corpus alleging that he was being illegally confined pursuant to a rendition warrant issued by the governor of Connecticut in response to a request for extradition from the state of Florida.[1] The trial court rendered a judgment granting the petitioner the relief he sought. Upon the trial court's denial of the respondent's motion to set this judgment aside, the respondent appealed. We find error.

In the trial court, the petitioner claimed that his extradition was not justified by the supporting documentation tendered by the state of Florida because: (1) the extradition documents on their face were not in order; and (2) the petitioner had not been substan-

---

[1] The respondent, David Bourbeau, is a Connecticut state trooper who arrested the petitioner on the rendition warrant issued by the governor of Connecticut.

tially charged with a crime in the demanding state.[2] See General Statutes § 54-159.[3] At the hearing, the trial court interpreted the petitioner's first ground to include the claim that the documents were defective on their face because they lacked proper authentication.[4]

When the governor of Connecticut issued his rendition warrant, he had before him a demand for extradition from the governor of Florida that certified: that the documents attached thereto were authentic and duly authenticated in accordance with the laws of the state of Florida; that Ricky Lynn Fain stood charged with the crime of grand theft in the second degree committed in that state; that Fain was present in that state

[2] In the application for the writ of habeas corpus, the petitioner also challenged whether he was the person named in the request for extradition and whether he was a fugitive. At the hearing on his petition, the petitioner stipulated that these two criteria for a valid extradition had been met.

[3] "[General Statutes] Sec. 54-159. REQUIREMENTS FOR RECOGNITION OF EXTRADITION DEMAND. No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 54-162, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

[4] This ground was expressly raised in an amendment to the petitioner's writ filed after the trial court's judgment in his behalf. The respondent maintains that this amendment came too late because the issue had not been raised in the petitioner's original pleading. We disagree. Although the petition is not a model of the pleader's art, the trial court was entitled, in its discretion, to conclude that the petitioner had challenged the sufficiency of the Florida documentation on its face, and that this challenge encompassed the issue of proper authentication.

at the time of the commission of that crime; and that thereafter Fain had fled from the justice of that state. Accompanying the request for extradition were a number of documents, including the following that are of particular importance for this case: (1) an "Application for Requisition" of Fain, dated March 19, 1982, addressed to the governor of the state of Florida and sworn to by a named Florida state's attorney, stating that Fain was charged by a pending information with the crime of grand theft in the second degree, that Fain was present in Florida at the time he allegedly committed this crime, and that Fain thereafter fled from Florida; (2) a capias, dated September 11, 1981, issued by a named clerk of the court for Fain's detention; (3) an information, dated September 11, 1981, signed, notarized and sworn to by a named assistant state's attorney, charging Fain with the commission of grand theft second degree; (4) a criminal report affidavit in support of the information, dated August 24, 1981, signed, notarized and sworn to by Tampa police officer C. E. Milana; (5) a certification by a named court clerk, dated February 23, 1982, certifying that the enclosed information, capias and criminal report are true and correct copies of the originals on file; the clerk's signature and his capacity are certified by a named judge whose signature and capacity are in turn certified by the clerk; and (6) an "Affidavit in Aid of Extradition," dated March 29, 1982, signed by Officer Milana, sworn to before a Florida judge whose signature is illegible, that states that Milana personally investigated the crime with which Fain is charged, and that bears the endorsement of the judge that there is probable cause that Fain committed the offense charged.[5]

---

[5] In addition, the Florida documents contained: (1) a nomination dated April 7, 1982, signed by the governor and the secretary of state of the state of Florida, bearing the seal of the state of Florida, that designated the person deputized to receive Fain; and (2) a copy of Fain's fingerprint card signed by him and accompanied by two photographs of him.

In its review of this extensive documentation, the trial court found a fatal defect in the "Affidavit in Aid of Extradition" because "nowhere among the rendition documents is there any certification of the identity by name of the person who . . . made a finding that 'there is probable cause to believe that such offense was committed by the accused.' That person's signature is illegible, there is contained no statement authenticating that the signature is the signature of a named person who the authenticator certifies to be a magistrate of a Florida court." The court recognized that the governor of Florida had certified that "copies of Application, Affidavit made before a magistrate of the State of Florida, and Information" are "authentic and duly authenticated in accordance with the laws . . . ." Nonetheless, the court concluded that the affidavit did not comport with the provision of General Statutes § 54-159 requiring authentication of the information or affidavit substantially charging the person to be extradited with having committed a crime in the demanding state.[6] Applying the criteria of General Statutes § 1-36,[7] the Uniform Acknowledgment Act,

---

[6] For text of General Statutes § 54-159, see footnote 3, supra.

[7] General Statutes § 1-36, the Uniform Acknowledgment Act, provides:

"AUTHENTICATION. (1) If the acknowledgment is taken within this state or is made without the United States by an officer of the United States no authentication shall be necessary.

"(2) If the acknowledgment is taken without this state, but in the United States, or a territory or insular possession of the United States, the certificate shall be authenticated by a certificate as to the official character of such officer, executed, if the acknowledgment is taken by a clerk or deputy clerk of a court, by the presiding judge of the court or, if the acknowledgment is taken by a notary public, or any other person authorized to take acknowledgments, by a clerk of a court of record of the county, parish or district, or the clerk of the town, in which the acknowledgment is taken. The signature to such authenticating certificate may be a facsimile printed, stamped, photographed or engraved thereon when the certificate bears the seal of the authenticating officer. A judge or clerk authenticating an acknowledgment shall endorse thereon or attach thereto a certificate in

the court found the governor's certification to be insufficient because it contained no statement identifying the person purporting to be the judge who acknowledged the "Affidavit in Aid of Extradition," no statement certifying that he is a judge of the Florida court and no statement of acquaintance with the alleged judge's handwriting or certification of its genuineness. Since the "Affidavit in Aid of Extradition" was the only document purporting to make a finding of probable cause that Fain had committed a crime in Florida, its lack of authentication made the extradition documents as a whole defective on their face.[8]

Having determined that the extradition documents were not in order because of their lack of proper authentication, the trial court then considered whether the petitioner Fain had been substantially charged by the state of Florida as § 54-159 requires. The court

substantially the following form:

"State of.....

"County of....

"I . . . (judge or clerk) of the . . . in and for said county, which court is a court of record, having a seal, (or I, clerk of the town of . . . in said county,) do hereby certify that . . . by and before whom the foregoing (or annexed) acknowledgment was taken, was at the time of taking the same a notary public (or other officer) residing (or authorized to act) in said county, and was authorized by the laws of said state to take and certify acknowledgments in said state, and, further, that I am acquainted with his handwriting and that I believe that the signature to the certificate of acknowledgment is genuine.

"In testimony whereof I have hereunto set my hand and affixed the seal of the court this . . . day of . . ., 19...

"(3) If the acknowledgment is taken without the United States and by a notary public or a judge or clerk of a court of record of the country or the clerk of the town where the acknowledgment is taken, the certificate shall be authenticated by a certificate under the great seal of state of the country, affixed by the custodian of such seal, or by a certificate of a diplomatic, consular or commercial officer of the United States accredited to that country, certifying as to the official character of such officer. The officer authenticating an acknowledgment shall endorse thereon or attach thereto a certificate in substantially the form prescribed in subsection (2) of this section."

[8] The certification of the authenticity of documents by the court clerk predated, and hence could not validate, the "Affidavit in Aid of Extradition."

determined that the petitioner had also established this alternate basis for his writ of habeas corpus. The court agreed with the petitioner that the "Affidavit in Aid of Extradition" failed to show that he had been substantially charged with the crime of grand theft in the second degree under Florida Statutes § 812.014 (2) (b)[9] because the statements in the affidavit failed to charge Fain with wrongfully obtaining or using, or endeavoring to obtain or use, the property of another with intent to deprive him of a right to the property or a benefit therefrom or to appropriate the property to his own use. In the view of the court, the facts alleged would arguably support a civil action for breach of contract but not the commission of the crime of theft.

Upon the respondent's subsequent motion to open the judgment rendered in the petitioner's favor, the trial court clarified its position on the issue of whether the petitioner had been substantially charged. The court stated that the finding of probable cause by a nameless judge could not justify the issuance of an arrest warrant described in a capias dated some six months earlier. Under these circumstances, the court found, "the finding of probable cause is not clothed with any presumption of regularity." Without the benefit of such a presumption, the challenged affidavit, lacking an allegation that the statements made were based on the personal knowledge of the affiant or on information supplied by reliable informers, did not suffice to establish probable cause that Fain had committed the crime

---

[9] Florida Statutes § 812.014 provides in relevant part: "THEFT. (1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom. (b) Appropriate the property to his own use or to the use of any person not entitled thereto. (2) . . . (b) It is grand theft of the second degree and a felony of the third degree, punishable as provided in ss. 775.082, 775.083, and 775.084, if the property stolen is: 1. Valued at $100 or more, but less than $20,000."

with which he had been charged. Without a showing of probable cause, the documentation furnished by the state of Florida did not suffice to "substantially charge" Fain with the commission of a crime in the state of Florida, and hence did not justify his extradition.

In his appeal, the respondent claims that the trial court erred in finding that the documents from the state of Florida were not properly authenticated and in finding that the petitioner had not been substantially charged with the crime of larceny in that state for lack of probable cause. We agree with both of these claims of error.

The scope of the inquiry that an asylum state is authorized to make in a contest over extradition is a limited one. In accordance with constitutional principles of comity and the provisions of the Uniform Criminal Extradition Act, General Statutes § 54-157 et seq., proceedings in the asylum state must recognize that proceedings in the demanding state are clothed with the traditional presumption of regularity. *Michigan* v. *Doran,* 439 U.S. 282, 289-90, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978); *Parks* v. *Bourbeau,* 193 Conn. 270, 276, 477 A.2d 636 (1984); *Wentworth* v. *Bourbeau,* 188 Conn. 364, 370-71, 449 A.2d 1015 (1982). It is from this perspective that we must determine whether extradition documents "on their face are in order" and whether the petitioner has been "substantially charged" in the demanding state.

It is no longer debatable that a presumption of regularity ordinarily attaches to a determination of probable cause by a neutral judicial officer in the demanding state. *Michigan* v. *Doran,* supra, 290. The question that divides the parties is whether this presumption is fatally undermined when the signature of

the judicial officer is illegible and is not specifically authenticated by other underlying documentation furnished by the demanding state.

General Statutes § 54-159, which establishes the documentary requirements for a valid extradition request, states that "[t]he indictment, information or affidavit made *before the magistrate* must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, [or] affidavit . . . must be authenticated *by the executive authority* making the demand." (Emphasis added.) The petitioner argues, as the trial court held, that an acknowledgment is an integral part of any affidavit, and that the requirements of § 54-159 must therefore be read in conjunction with those of the Uniform Acknowledgment Act, General Statutes § 1-36. The respondent, while conceding that the affidavit does not comply with § 1-36, urges that those statutory requirements are inapplicable to extradition documentation because § 54-159 provides for authentication by the executive authority. The governor of the state of Florida in this case expressly certified that the documents attached to the rendition warrant were authentic and duly authenticated in accordance with the laws of the state of Florida.

We agree with the respondent's construction of § 54-159. In the context of extradition proceedings, in which considerable deference is afforded to the proceedings of the demanding state, we should not superimpose general Connecticut authentication requirements upon the specific provisions for authentication contained in the extradition statute itself. Courts in other jurisdictions have similarly concluded that a demanding governor's certification of authentication is binding upon the courts of an asylum state. See *Clark* v. *Leach,* 200 Colo. 151, 153, 612 P.2d 1130 (1980); *People ex rel. Dimas* v. *Shimp,* 83 Ill. App. 3d 150, 155,

403 N.E.2d 750 (1980); *Austin* v. *Brumbaugh,* 186 Neb. 815, 818–19, 186 N.W.2d 723 (1971); *Ex Parte Paulson,* 168 Or. 457, 472–73, 124 P.2d 297 (1942); *Ex Parte Posey,* 453 S.W.2d 833, 836 (Tex. Crim. App. 1970); *State ex rel. Clayton* v. *Wolke,* 69 Wis. 2d 363, 368–69, 230 N.W.2d 869 (1975); see also 1 Wharton, Criminal Procedure (12th Ed. Torcia 1974) § 116. Unless there is a defect on the face of extradition papers other than a lack of individualized authentication, the certificate of the demanding governor forecloses further judicial scrutiny.

Our resolution of the question of authentication against the petitioner requires us to conclude that the trial court also erred in finding that the petitioner had not been "substantially charged" with the crime of larceny. The test for whether a person has been "substantially charged" is whether the charge of which he has been formally accused is based upon probable cause. *Parks* v. *Bourbeau,* supra, 276; *Wentworth* v. *Bourbeau,* supra, 368. While this case was pending on appeal, we have, on two occasions, determined that "once the demanding state submits documents that facially satisfy the requirements of the Uniform Criminal Extradition Act; General Statutes § 54-157 et seq., esp. § 54-159; it is the demanding state rather than the custodial state which must determine whether an arrest is constitutionally defective for lack of probable cause." *Knight* v. *Bourbeau,* 194 Conn. 702, 703, 485 A.2d 919 (1984); *Parks* v. *Bourbeau,* supra, 276–77. In light of these precedents, it is the Florida courts, and not those of Connecticut, that must decide whether the documents charging the petitioner with grand theft in the second degree properly allege the elements required for commission of that crime under Florida law.

There is error, the judgment is vacated and the trial court is directed to enter a judgment denying the petitioner a writ of habeas corpus.

In this opinion the other judges concurred.