George Givan SCHUMM,
Petitioner-Appellant,

v.

Ed D. NELSON, Sheriff of Arapahoe
County, State of Colorado,
Respondent-Appellee.

No. 81SA513.

Supreme Court of Colorado,
En Banc.

March 14, 1983.

J. Gregory Walta, Colorado State Public
Defender, Terri L. Brake, Deputy State
Public Defender, Denver, for petitioner-ap-
pellant.

J.D. MacFarlane, Atty. Gen., Charles B.
Howe, Deputy Atty. Gen., Joel W. Cantrick,
Sol. Gen., Clement P. Engle, Asst. Atty.
Gen., Denver, for respondent-appellee.

DUBOFSKY, Justice.

The petitioner-appellant, George Givan
Schumm, appeals the Arapahoe County dis-
trict court's discharge of his two petitions
for writ of habeas corpus. The district
court discharged the first petition, which
alleged that the petitioner had been held
one day beyond the maximum incarceration
of 90 days allowed under the Uniform
Criminal Extradition Act, sections 16–19–
101 et seq., C.R.S.1973 (1978 Repl.Vol. 8), as
moot because the defendant had been
served with the governor's warrant. The
district court discharged the second petition
because all of the documents construed to-
gether substantially charged the petitioner
with committing a crime in Tennessee. We
affirm the rulings of the district court.

On April 30, 1981, the petitioner was ar-
rested in Arapahoe County as a fugitive
from the state of Tennessee. He appeared
before the district court on May 1, 1981, to
be charged as a fugitive and advised of his
rights. When the petitioner again ap-
peared in court on June 1, 1981 for return

of the governor's warrant, he was recommitted to jail until July 30, 1981.[1]

On July 29, 1981, the petitioner appeared in district court to petition for a writ of habeas corpus on the ground that he had been confined longer than the 90 days permitted by statute. Before ruling on the petition, the court asked an officer of the Arapahoe County sheriff's office to serve the governor's warrant on the petitioner. The court then issued a writ of habeas corpus, set a return to the writ, and ordered the petitioner held without bond under the governor's warrant, but stayed execution of the warrant until the petitioner could file a second petition for a writ of habeas corpus.

The petitioner filed a second habeas corpus petition containing various allegations of defects in the extradition documents. The only defect the petitioner raises on appeal is that the Tennessee documents describing the crime for which the petitioner was sought as "sale and delivery of a controlled substance, to wit: Hydromorphone," were inconsistent with the Colorado governor's warrant referring to the charge as "sale of a controlled substance, to wit: hydromorphone" and the Colorado governor's executive order authorizing the Tennessee agent to take custody of the fugitive for "sale of a controlled substance, to wit: hydrophone" (sic). The petitioner alleges that documents charging a sale only rather than a sale and delivery are inconsistent and that extradition for sale of a synthetic narcotic, hydromorphone, is different from extradition for an allegedly criminal offense of selling a hydrophone, defined in Webster's Third New International Dictionary (1961) as an instrument for listening to sound transmitted through water.

The district court heard both petitions on August 12, 1981 and discharged both writs. The court discharged the first writ as moot. In discharging the second, the court noted that the petitioner had been charged by indictment in Tennessee and that the only inconsistency in the documents appeared in the Colorado governor's warrant and supporting documents. The court construed the documents together as showing that the petitioner was substantially charged with a crime in Tennessee. We agree with both rulings.

## I.

The district court did not reach the petitioner's contention that his pre-warrant detention commenced on April 30, 1981, the day of his arrest, and thus exceeded the 90 day limit established by sections 16–19–116 and 16–19–118, C.R.S.1973 (1978 Repl.Vol. 8).[2] The district court properly ruled that once the governor's warrant was served on July 29, issues concerning the petitioner's previous detention were moot.

---

1. Section 16–19–116, C.R.S.1973 (1978 Repl. Vol. 8) allows an alleged fugitive to be committed to jail for 30 days. Section 16–19–118, C.R.S.1973 (1978 Repl.Vol. 8) allows recommitment for a period of 60 days. The maximum incarceration allowed under the Uniform Criminal Extradition Act is 90 days.

2. We note, however, that the 90-day period does not commence from the date of arrest prior to requisition; rather, it commences on the date the accused is first advised in court, here May 1.

Section 16–19–116 provides: "If from the examination before the judge it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising under section 16–19–107, that he has fled from justice, the judge shall, by a warrant reciting the accusation, commit him to the county jail for such a time not exceeding thirty days and as specified in the warrant as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in section 16–19–117, or until he is legally discharged."

Section 16–19–118 provides: "If the accused is not arrested under warrant of the governor by the expiration of the time specified in the warrant or bond, a judge of a district court may discharge him or may recommit him for a further period not to exceed sixty days, or a judge of a district court may again take bail for his appearance and surrender, as provided in section 16–19–117, but within a period not to exceed sixty days after the date of the new bond."

Therefore, the 90 days expired on July 30, 1981. See section 2–4–108(1), C.R.S.1973 which provides that in computing a statutory period of days, the first day is excluded, and the last day included.

Michaels v. Caldwell, 646 P.2d 899 (Colo. 1982); Simmons v. Leach, 626 P.2d 164 (Colo.1981); Whittington v. Bray, 200 Colo. 17, 612 P.2d 72 (1980); Crumrine v. Erickson, 186 Colo. 139, 526 P.2d 148 (1974).

The petitioner suggests that the district court should have ruled on his first petition on July 29, 1981, prior to permitting service of the governor's warrant. However, the district court could not have ruled on the merits of the first petition until after sufficient time was allowed for issuing a writ, filing a return, and setting a hearing on the merits. Sections 13–45–101(1) and 13–45–103(1), C.R.S.1973. Nothing prevents service of a governor's warrant in the interim, and the first petition became moot as soon as the petitioner was arrested under the governor's warrant on July 29. See Crumrine v. Erickson, supra.

## II.

■ Our reading of the documents at issue in the second petition convinces us that they are not significantly inconsistent, that the petitioner is substantially charged with a crime in Tennessee, and that the charge is described in readily understandable terms in the various documents. The minor variances are immaterial clerical inconsistencies or typographical errors made in the course of transposition of the information from the Tennessee documents to the Colorado documents. The variances do not affect the validity of the governor's warrant. Wilson v. Johnson, 645 P.2d 21 (Colo.1982); Johnson v. Kiefer, 624 P.2d 894 (Colo.1981); Richardson v. Cronin, 621 P.2d 949 (Colo.1981).

Judgment affirmed.