STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael Noel STONE, Defendant-Appellant.
[Case No. 82–080.]

STATE EX REL. Hickman M. CORLEY, Jr.,
Petitioner-Appellant,

v.

Edwin WILLIAMS, Adams County Sheriff, Respondent.
[Case No. 82–896.]

Supreme Court

*Nos. 82–080, 82–896. Argued January 6, 1983.—
Decided March 29, 1983.*

(Also reported in 331 N.W.2d 83.)

For the appellant there was a brief and oral argument by *L. William Connolly,* Milwaukee. [Case No. 82–080.]

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 82–080.]

For the appellant there were briefs and oral argument by *James M. Mason,* Wisconsin Rapids. [Case No. 82–896.]

For the respondent the cause was argued by *Pamela Magee-Heilprin,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 82–896.]

HEFFERNAN, J.   Both of these appeals arise out of extradition demands under the Uniform Criminal Ex-

tradition Act, sec. 976.03, Stats. The State of Michigan sought the return of Stone to answer to charges of drug law violations, and the State of Ohio sought the return of Corley, who allegedly escaped from confinement there. Both were taken into custody in Wisconsin pursuant to warrants issued by the governor of Wisconsin following extradition demands made by the governors of Michigan and Ohio.

Both Stone and Corley sought to test the warrant issued in the demanding state in separate Wisconsin habeas corpus proceedings. Each of them based his demand for release on the ground that the warrant of the demanding state, and hence the warrant of the Wisconsin governor, was not based upon probable cause.

The State of Wisconsin resisted the demand for release on habeas corpus, contending in each case that, subsequent to *Michigan v. Doran*, 439 U.S. 282 (1978), where there was a judicial determination of probable cause in the demanding state, an asylum state was foreclosed from making any determination in respect to probable cause.

The Wisconsin law, clearly controlling prior to *Doran*, was that stated in *State ex rel. Sieloff v. Golz*, 80 Wis. 2d 225, 258 N.W.2d 700 (1977). This court therein held that an issue for a habeas corpus court in an asylum state in an extradition proceeding was whether properly authenticated documents from the demanding state demonstrated such probable cause as to justify the issuance of a governor's warrant in the asylum state.

In *Sieloff,* p. 242, we stated that:

"[T]here need be no deference accorded at this stage of the proceeding . . . to a finding of probable cause by the demanding state's magistrate."

This court, nevertheless, has always recognized the primacy of the federal law in interstate extradition. We said in *Sieloff,* p. 238:

"[A state] may not enact or enforce standards in derogation of the federal rights of other states of the Union to obtain the return of persons who have violated their laws and fled from those jurisdictions."

Because we recognize the primacy of federal law, we follow the mandates of the United States Supreme Court in respect to the standards to be applied in extradition proceedings. While *Sieloff,* relying upon the Fourth Amendment, dictated that there be an opportunity for *de novo* review of the probable cause foundation for the issuance of the warrant of the asylum state's governor, *Doran,* relying upon the extradition clause, Art. IV, sec. 2, cl. 2,[1] of the United States Constitution, concluded that almost absolute deference was required to a finding of probable cause in the demanding state.

The United States Supreme Court held in *Doran,* p. 290:

"[O]nce the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state."

*Doran* also made it explicit that not only was review of the existence of probable cause in the demanding state precluded if an appropriate determination had been made there, but it also strictly limited the review of any action pursuant to the demand that had been undertaken by the governor of the asylum state. *Doran* stated, p. 289:

"Once the [asylum state] governor has granted extradition, a court considering release on habeas corpus can

[1] "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

Thus, even though it were to be argued that *Doran* did not expressly address the propriety of a court's review of the asylum state's governor's determination of probable cause for the issuance of his warrant, it seems clear that such a review is not encompassed in the review permitted by *Doran*.

The general attitude of the United States Supreme Court in respect to extradition proceedings is capsulized in the following quotation from *Doran,* p. 290:

"[W]hen a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review that determination. . . . To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the *summary and mandatory procedures* authorized by Art. IV, sec. 2." (Emphasis supplied.)

Accordingly, it is apparent that *Sieloff* no longer correctly states the duty of a habeas corpus court in an asylum state when there has been a determination of probable cause by a judicial officer in the demanding state and the demanding state's documents are, on their face, in proper order. The United States Supreme Court's view of the law as stated in *Doran* is controlling. We are not, however, obliged to overrule *Sieloff*, for, in circumstances where the demanding state has not made a judicial determination of probable cause or where the documents do not demonstrate *prima facie* validity, the *Sieloff* analysis appears to be appropriate and not in conflict with controlling federal extradition law.

Having concluded that the law as stated in *Michigan v. Doran* is controlling, we turn to the application of that case to the facts of the two cases before us.

Stone was arrested under a warrant for commitment issued August 18, 1981, pursuant to sec. 976.03(15), Stats. A warrant was issued by the governor of Wisconsin for Stone's arrest and extradition on October 5, 1981. The extradition warrant was based on the requisition of the governor of Michigan, dated September 9, 1981, stating that Stone was charged with two counts of delivery of a controlled substance in Michigan. The Michigan demand for extradition was accompanied by copies of the complaint, of the arrest warrant, and of an affidavit of probable cause.

Stone petitioned for a writ of habeas corpus to challenge the governor's warrant pursuant to sec. 976.03 (10), Stats. Judge Neal Nettesheim, Circuit Judge, Waukesha county, upheld the extradition warrant on the grounds that the affidavit of probable cause stated probable cause to believe Stone committed the charged offenses.

Judge Nettesheim acknowledged *Michigan v. Doran* but felt obliged to follow the methodology laid down by this court in *Sieloff*. Basing his conclusion upon the *Sieloff* analysis, he found facts sufficient to justify probable cause and quashed the writ.

It is clear that, under the *Doran* analysis, which we are obliged to adopt, Judge Nettesheim's analysis was superfluous. At the most, assuming the *prima facie* sufficiency of the documents—a fact not challenged—he could only inquire whether a finding of probable cause had been made by a judicial officer in the demanding state.

Because the Michigan documents supporting the demand for extradition are before us, we make that limited inquiry. The warrant issued pursuant to the complaint recites, over the signature of the Michigan judge:

"Whereas on examination of said sworn COMPLAINT and other sworn testimony by me, it appears to me that said offense has been committed and there is just cause to suspect that said Defendant(s) are guilty . . . ."

Moreover, sec. 764.1a, Michigan Stats., recites that a warrant shall be issued upon a finding of "reasonable cause."

It is clear, and it is not asserted to the contrary by Stone, that this finding is the equivalent of a finding of probable cause. Under *Doran,* we can go no further. Because we conclude that the documents presented are concededly in proper order and because a judicial officer of the demanding state has made a finding of probable cause, our inquiry is at an end. The order of the circuit court for Waukesha county, which quashed Stone's petition for habeas corpus, is affirmed.

Turning next to Corley's application for habeas corpus, the following facts appear of record.

Corley was arrested pursuant to an extradition warrant issued by the governor of Wisconsin on April 16, 1982. This warrant was based on the request for interstate rendition from the governor of Ohio, dated March 19, 1982, stating that Corley was charged with the crime of escape in Ohio. The request for rendition was accompanied by copies of an affidavit for complaint, the complaint, and the warrant for arrest, among other papers. The warrant for arrest is signed by a municipal court judge and dated March 15, 1982. The warrant does not contain a statement that probable cause was found but does have a parenthetical reference, under the heading, to Rule 4(A)(1), Ohio Rules of Criminal Procedure.

Corley petitioned for a writ of habeas corpus. After a hearing, Circuit Judge Raymond E. Gieringer, Adams county, concluded that the papers from the demanding state were in order and that they established probable

cause. He quashed the writ of habeas corpus. Corley appealed.

It is apparent that Corley's case presents a somewhat different facet of extradition law than that discussed above in respect to Stone. In respect to Stone, there was an express recital in the documents from the demanding state that Stone's warrant was based upon a judicial determination of "just [probable] cause"; and, accordingly, a court in this state is precluded from making an independent or *de novo* probable cause determination. In respect to Corley, however, the magic words, "probable cause," "just cause," or "reasonable cause," do not appear in the extradition documents. What does appear on the face of the Ohio warrant is the caption:

"Warrant for Arrest
(Rule 4(A)(1), Ohio Rules of Criminal Procedure)"

Rule 4(A)(1), which thus has been incorporated by reference into the complaint charging Corley, provides:

"If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant . . . shall be issued by a judge . . . to any law enforcement officer authorized by law to execute or serve it."[2]

The question in *Corley*, then, is whether the presumption of regularity which *Doran* mandates and which has been recognized in *State ex rel. Reddin v. Meekma*, 102 Wis. 2d 358, 365, 306 N.W.2d 664 (1981), leads to the conclusion that, when an independent judicial officer of a demanding state issues a warrant and the law of that state explicitly requires that warrants only be issued upon

---

[2] We take judicial notice of the statutes of other states of the United States by virtue of sec. 902.02(1), Stats.

probable cause, the issuance of the warrant constitutes a judicial declaration that there has been a finding of probable cause.

While it is clear that we could not apply such a presumption to an unsubstantiated warrant issued by a Wisconsin judge, the purposes of the extradition clause, at least as viewed by the most recent discussion by the United States Supreme Court in *Doran,* appear to be served by a sweeping application of interstate comity. Comity, as mandated by the United States Supreme Court in *Doran,* indicates that we should conclude, given the presumption of regularity, that warrants issued by a demanding state are issued only on the basis of probable cause. While such presumption is, as Corley contends, undoubtedly a rebuttable one, the presumption cannot, under *Doran,* be attacked in the courts of the asylum state. As we said in *Reddin v. Meekma, supra,* p. 365, the proper forum for such attack upon the underpinnings of the warrant is the court of the demanding state that issued the warrant.

Thus, we conclude that, in accordance with interstate comity and in accordance with the presumption of regularity of the court proceedings in other states, mandated in respect to extradition by *Doran,* we must presume that the warrant issued in Ohio for the arrest of Corley for escape—a warrant that incorporated by reference the Ohio statute requiring that warrants be issued only upon probable cause—was in fact issued on the basis of an explicit finding of probable cause. Accordingly, we conclude that, because the finding of probable cause was made in Ohio by a judicial officer, this court is precluded from further inquiry. We need not, and under the current status of the federal law we may not, look to the facts to determine whether in our view there was probable cause for an arrest.

We, therefore, conclude that the order of the circuit court for Adams county quashing Corley's application for habeas corpus must be affirmed.

We affirm the order of the circuit court for Waukesha county quashing the writ in respect to Stone, and we affirm the order of the circuit court for Adams county quashing the writ in respect to Corley.

*By the Court.*—Orders affirmed.