Steven K. ST. GERMAINE,
Petitioner–Appellant,

v.

CIRCUIT COURT FOR VILAS COUN-
TY, Respondent–Appellee.

No. 90–1061.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1991.

Decided July 23, 1991.

Rehearing Denied Aug. 15, 1991.

Steven P. Weiss, Office of the State Pub-
lic Defender, Madison, Wis., for petitioner-
appellant.

John D. Niemisto, Asst. Atty. Gen., Of-
fice of the Atty. Gen., Wisconsin Dept. of
Justice, Madison, Wis., for respondent-ap-
pellee.

Before BAUER, Chief Judge, and
WOOD, Jr. and POSNER, Circuit
Judges.

HARLINGTON WOOD, Jr., Circuit
Judge.

We do not see many habeas corpus cases
involving a driver's license offense, but this
case is different. Petitioner, Steven K. St.
Germaine, an enrolled member of the tribe
of Lac du Flambeau Band of Lake Superior
Chippewa Indians, was convicted in state
court of operating his motor vehicle on a
state highway within the reservation after
his driver's license had been suspended.
He challenges the jurisdiction of the Wis-
consin state court to enforce the applicable
state statute against him because of his
status as an Indian and because the
charged offense occurred within the
bounds of his reservation.[1] The parties
have agreed upon the applicable facts, so
we are presented only with a question of
law.

On April 27, 1988, petitioner was convict-
ed of a violation of section 343.44(2)(d) of
the Wisconsin State Motor Vehicle Code for
driving after his license had been revoked
for the fourth time,[2] and was thereafter

---

1. Petitioner's tribal reservation was created in
Wisconsin by the Treaty of September 30, 1854.
10 Stat. 1109, 2 Kapp 648. Since 1936 the tribe
has operated under a tribal government adopted
pursuant to section 16 of the Indian Reorganiza-
tion Act of 1934. 25 U.S.C. §§ 461–479. In
1984 the tribe enacted an interim Motor Vehicle

Code which was adopted in its final form in
1986 as approved by the United States.

2. Wis.Stat. § 343.44(1)–(2) provides:
   (1) No person whose operating privilege
   has been duly revoked or suspended pursuant
   to the laws of this state shall operate a motor

sentenced to 190 days in jail and fined $1,845.00. He appealed and the Wisconsin Court of Appeals rejected his arguments, *State v. St. Germaine*, 150 Wis.2d 171, 442 N.W.2d 53 (Ct.App.1989). The Wisconsin Supreme Court denied further review. This petition for writ of habeas corpus followed, was fully considered by Judge Shabaz in an order dated December 5, 1989, and was dismissed.

■ The petitioner recognizes that a state is not absolutely barred from exercising jurisdiction over the activities of tribal members on their reservation, but the exercise of state jurisdiction is limited and must be based upon a specific grant of authority by Congress. In *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987), the Court explained that Indian tribes retain attributes of sovereignty over their members and the reservation territory, but that tribal sovereignty was dependent on and subordinate to only the federal government and not the states. A major exception was set forth which provided that state laws may be applied to tribal Indians on their reservations but only if Congress has expressly so provided. *Id.*

■ The relevant federal statute is Public Law 280, 67 Stat. 588 (1953), as amended 18 U.S.C. § 1162, referred to as Pub.L. 280. It provides as follows:

Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

State or Territory of
. . .
Wisconsin

Indian country affected
. . .
All Indian country within the State

It is petitioner's position that Pub.L. 280 does not give the State of Wisconsin jurisdiction over petitioner to enforce its traffic laws on the reservation. Petitioner argues that the traffic offense for which he was convicted is not a state crime under the state's criminal law even though under certain circumstances it carries a criminal penalty. The criminal penalty, it is claimed, does not convert an otherwise regulatory

vehicle upon any highway in this state during such suspension or revocation or thereafter before filing proof of financial responsibility or before he has obtained a new license in this state or his operating privilege has been reinstated under the laws of this state. No person whose regular license has been duly revoked or suspended pursuant to the laws of this state, but whose chauffeur's license is still valid, shall operate a motor vehicle upon any highway in this state other than as a chauffeur before he has obtained a new license or has had his license reinstated under the laws of this state.

(2) Any person violating this section:

(a) For the first conviction within 5 years the person shall forfeit not less than $150 nor more than $600.

(b) For a 2nd conviction under this section or a local ordinance in conformity with this section within 5 years, a person shall be fined not less than $300 nor more than $1,000 and shall be imprisoned not less than 10 days nor more than 6 months.

(c) For a 3rd conviction under this section or a local ordinance in conformity with this section within 5 years, a person shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned not less than 30 days nor more than 9 months.

(d) For a 4th conviction under this section or a local ordinance in conformity with this section within 5 years, a person shall be fined not less than $1,500 nor more than $2,000 and shall be imprisoned not less than 60 days nor more than one year in the county jail.

(e) For a 5th or subsequent conviction under this section or a local ordinance in conformity with this section within 5 years, a person shall be fined not less than $2,000 nor more than $2,500 and shall be imprisoned for not less than 6 months nor more than one year in the county jail.

law into a crime for the purposes of Pub.L. 280. Both parties rely on *Cabazon,* although the state argues that *Cabazon* on its merits is plainly distinguishable from this present case. Petitioner claims that the *Cabazon* regulatory/criminal analysis has been misapplied in this case because the state statute was construed as prohibiting, not regulating, driving after a fourth offense. Petitioner would be immune from a state driving regulation. That "myopic" view taken in this case, as characterized by petitioner, is what he says was expressly rejected in *Cabazon.* Wisconsin, as do we, reads *Cabazon* otherwise.

Superficially *Cabazon* would at first glance appear to aid petitioner's case. The Court held that California and the county in which an Indian reservation is located could not enforce their gambling statutes or ordinances to curtail bingo and other forms of gambling open to the public but conducted on the reservation with federal approval. *Id.* at 221–22, 107 S.Ct. at 1094–95. Pub.L. 280 granted California broad criminal jurisdiction over Indian offenses on reservations in California as it does to Wisconsin. Accordingly, the *Cabazon* Court held it was necessary to determine whether the gambling restrictions were criminal and prohibitory in nature so as to be enforceable by the state or were merely regulatory so as not to be. *Id.* at 208, 107 S.Ct. at 1087. The Court recognized that there was no bright line distinction in making that determination free of exceptions. *Id.* at 210, 107 S.Ct. at 1088. It depended largely on the nature and intent of the state laws. The gambling California sought to curtail on the reservation was, however, permitted, although regulated, elsewhere in the state. *Id.* at 211, 107 S.Ct. at 1089. It was held that state authority was preempted by federal law because the state's sole interest to justify imposition of its gambling restrictions was to prevent infiltration by organized crime, but that was found to be incompatible with compelling federal interests. Those federal interests seek to promote tribal self-government, tribal self-sufficiency and economic development. *Id.* at 216, 107 S.Ct. at 1091. The Secretary of the Interior, and the Departments of Housing and Urban Development and Health and Human Services had all co-operated to assist the reservation revenue-raising gambling efforts. *Id.* at 218, 107 S.Ct. at 1093. Gambling provided the sole source of revenue for operating tribal government and the provision of tribal services. *Id.* at 218–19, 107 S.Ct. at 1093.

Wisconsin does not seek to do something on the reservation to Indians that it does not do everywhere in the state and to all offenders. It is understandably an important matter of Wisconsin public policy to protect the lives and property of all users of its highways, on or off the reservation, Indians or non-Indians. The Wisconsin statute, which does not carry a mandatory jail sentence and fine for first offenders, might to that extent be considered merely regulatory but that is not our case. For the fourth conviction, the statute carries a mandatory minimum jail sentence of sixty days as well as a minimum fine of $1,500. The imposition of a criminal penalty is not the sole test as *Cabazon* makes clear—simply because a statute is enforceable by criminal as well as civil means is not enough to convert a state statute from a regulation into a criminal law within the meaning of Pub.L. 280. *Id.* at 211, 107 S.Ct. at 1089. The shorthand test the Court prescribes is based on a determination of whether the conduct at issue violates the state's public policy. *Id.* at 213, 107 S.Ct. at 1090. The State of Wisconsin seeks to protect the lives and property of highway users from all incompetent, incapacitated, and dangerous drivers anywhere on its highways on a reservation or off. A clear and mandatory criminal penalty is imposed to enforce its prohibition. This is public policy enforcement of high order. The state's public policy in enforcing this criminal penalty and deterring dangerous drivers does no violence to any tribal vehicle regulation which the tribe enforces. The tribe may continue to enforce its regulations, as the state concedes. The state seeks to work with the tribe to improve vehicle control on the reservation. The tribe does not issue driver's licenses. The

state controls driver licensing for all its residents.

The Wisconsin statute is not ambiguous in any respect as applied to plaintiff. It does not call for the application of any canon of construction transforming statutory ambiguities into a generalized legal presumption favoring Indians as petitioner would have us do. *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506, 106 S.Ct. 2039, 2044, 90 L.Ed.2d 490 (1986).

Congress has made it plain that Wisconsin can enforce its criminal laws on reservations. That is all Wisconsin is doing. This enforcement of Wisconsin driver's license public policy by the imposition of criminal sanctions does not impinge upon the respected tribal "attributes of sovereignty over both their members and their territory." *Cabazon*, 480 U.S. at 207, 107 S.Ct. at 1087. The tribal Indians as well as the general public are all better served by uniform enforcement of the Wisconsin driver's license law.

AFFIRMED.