STATE of Wisconsin EX REL. Larry LYKINS, Petitioner-
Appellant, †

v.

Virgil H. STEINHORST, Sheriff of Sauk County,
Respondent-Respondent.

Court of Appeals

*No. 94–3283. Submitted on briefs September 11,
1995.—Decided October 26, 1995.*

(Also reported in 541 N.W.2d 234.)

† Petition to review denied.

876

For the petitioner-appellant the cause was submitted on the briefs of *Kimberly M. Vele* of *Vele & McKittrick Law Office* of Evansville.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

EICH, C.J.   Larry Lykins appeals from an order quashing his petition for a writ of habeas corpus chal-

877

lenging his arrest and detention pursuant to an extradition warrant.

The issues are: (1) whether the warrant is void on its face for failing to establish that a neutral judicial officer in the demanding state found probable cause that he had committed a crime; (2) whether the fact that the hearing on Lykins's habeas corpus petition was not held within thirty days of his arrest requires his release for violation of § 976.03(15), STATS., which sets a deadline of thirty days after a fugitive arrest for issuance of the governor's warrant; and (3) whether the State lacks jurisdiction over Lykins because he is a member of the Apache tribe and was arrested at a gambling casino located on tribal trust land of the Ho Chunk nation in Wisconsin.

We answer all questions in the negative and affirm the order.

The facts are not in dispute. Lykins was arrested on October 5, 1994, at the Ho Chunk gambling casino located on Ho Chunk tribal trust land in Wisconsin.[1] On October 27, the Wisconsin governor's extradition warrant was issued, based on an Illinois requisition

---

[1] Both the record and the parties' briefs are silent as to why, or under what authority, Lykins was arrested. At one point in his brief, Lykins states that the arrest was without a warrant. He concludes his brief with a request for reversal on grounds that the State lacked authority "to serve and execute a warrant-less arrest *or* an extradition warrant of an Indian on a reservation" (emphasis added).

The extradition statute states that fugitives may be arrested either with a warrant issued by a Wisconsin court or without a warrant "upon reasonable information that the accused stands charged [with a felony] in the courts of another state . . . ." Section 976.03(14), STATS. We assume Lykins was so arrested, and we acknowledge that his challenge is to the extradition proceedings thereafter instituted.

stating that one Phillip Marshall had been convicted of five counts of aggravated sexual assault and seven counts of criminal sexual abuse while on parole from prison. The Illinois documents included authenticated copies of the Illinois convictions and sentences, a parole agreement, a presentence report and an affidavit of the chief administrative officer of the Vienna, Illinois, correctional facility indicating that Phillip Marshall had absconded from his parole and has never been discharged from his sentences for the above-mentioned offenses.

Lykins filed his habeas corpus petition on November 15, 1994, claiming that he was illegally arrested on Indian land and that the Illinois extradition paperwork should be disregarded because it related to an individual named Phillip Marshall. The petition was heard on December 12, and the trial court ruled (a) that Lykins had not established that he was not the "Phillip Marshall" referred to in the Illinois papers,[2] and (b) that the provisions of 18 U.S.C. § 1162 authorizing the State of Wisconsin to exercise criminal jurisdiction on Indian lands authorized Lykins's arrest.

## I.   The Validity of the Warrant

Extradition is a matter of federal law originating in Article IV, Section 2, Clause 2, of the United States Constitution, which provides:

> A person charged in any state with . . . [a crime], who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be

---

[2] Lykins has apparently abandoned any "identity" argument, for he does not argue on this appeal that he is not the person mentioned in the Illinois documents.

removed to the state having jurisdiction of the crime.

■

In *Michigan v. Doran*, 439 U.S. 282, 285, 290 (1978), a leading case interpreting the clause, the Supreme Court stated that once the governor of the asylum state has acted on a request for extradition based on the demanding state's "judicial determination that probable cause existed" to believe "that the fugitive had committed a crime" under the law of the demanding state, the bounds of judicial inquiry into the matter by courts in the asylum state are strictly limited. In that situation, the asylum state court may make "no further judicial inquiry" into probable cause, and its review is limited to determining:

> (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Id.* at 289-90. The Wisconsin Supreme Court adopted the *Doran* rule in *State v. Stone*, 111 Wis. 2d 470, 475, 331 N.W.2d 83, 85 (1983).

The deference owed to the requesting state's probable cause determination is based to a large degree on the "summary" nature of the extradition process. *See Doran*, 439 U.S. at 287 (extradition clause of the U.S. Constitution intended to enable requesting states "to bring offenders to trial as swiftly as possible"); *State ex rel. Ehlers v. Endicott*, 188 Wis. 2d 57, 63, 523 N.W.2d 189, 192 (Ct. App. 1994) (aim of extradition is to "provide a summary and mandatory proceeding").

Lykins argues that because the Illinois extradition papers do not contain a specific finding by a "neutral judicial officer" that probable cause exists that he has committed a crime in that state, the warrant must fail and he must be released from custody. He acknowledges that in *Ehlers*—a case, like this one, where the documents forwarded by the requesting state (Illinois) did not contain "an express statement of probable cause to support the charges"—we inferred the existence of such a finding from the fact that an arrest warrant had issued in Illinois and Illinois law requires a finding of probable cause for issuance of warrants.[3] He argues, however, that *Ehlers* is inapplicable because the Illinois papers in this case did not contain a warrant for his arrest.

The State responds, and we agree, that the reason the extradition request did not include an arrest warrant or separate statement of probable cause to believe that he had committed a crime in Illinois is that *he had already been found guilty, convicted and sentenced on twelve felony counts in that state*—based not just on probable cause, but upon proof beyond a reasonable doubt. There is no question that the Illinois documents

---

[3] Relying on *State v. Stone*, 111 Wis. 2d 470, 477-78, 331 N.W.2d 83, 85 (1983), a case reaching a similar result, we said in *Ehlers* that even though neither the criminal complaint nor the search warrant forwarded by the State of Illinois along with the extradition request contained or incorporated any probable-cause determination, we could take judicial notice of Illinois statutes requiring a magistrate's finding of probable cause before a search warrant may be issued and conclude from that alone "that a judicial determination of probable cause was made by an Illinois court when the arrest warrant was issued." *State ex rel. Ehlers v. Endicott*, 188 Wis. 2d 57, 64, 523 N.W.2d 189, 192 (Ct. App. 1994).

establish not only Lykins's convictions on those charges but also his absconding after being released on parole prior to completing his sentence.[4]

In extradition proceedings, the proceedings in the demanding state are clothed with a presumption of regularity, *State ex rel. Reddin v. Meekma*, 102 Wis. 2d 358, 365, 306 N.W.2d 664, 667, *cert. denied*, 454 U.S. 902 (1981), and we agree with the court's analysis in *Chamberlain v. Celeste*, 729 F.2d 1071, 1074 (6th Cir. 1984), rejecting the same argument Lykins makes here. The habeas corpus petitioner argued in *Chamberlain* that the requesting state's extradition documents were not in order because they " 'fail[ed] to show that [the demanding state] ha[d] probable cause to extradite,' " and the court responded:

> "Apparently, petitioner believes that a judicial finding of probable cause comparable to the preliminary inquiry traditionally required between arrest and trial is required here. However, petitioner overlooks the fact that he has already been found guilty beyond a reasonable doubt by the demanding state for the crime which forms the basis of the extradition request."

*Id.* (quoted source omitted). *See also In re Moskaluk*, 591 A.2d 95, 98 (Vt. 1991) (judgment of conviction establishes factual basis for the extraditable crime and no additional findings required to establish parole or probation violation); *Gordon v. Cronin*, 586 P.2d 226,

---

[4] Lykins, without objection by the State, has supplemented the record with copies of the papers accompanying the Illinois extradition request, including affidavits and other documents indicating that Lykins, while on parole in Illinois for the offenses, had fled the state without completing his sentence.

227 (Colo. 1978) ("[n]o showing of probable cause is necessary for the extradition of a defendant who has been convicted and sentenced").[5]

█ The judicial determination of Lykins's guilt on the several Illinois charges is entitled to no less currency than the issuance of the arrest warrant in *Ehlers* with respect to meeting the probable-cause requirement for extradition. The extradition warrant is facially valid.

## II. Lykins's Detention

Lykins, citing § 976.03(15), STATS., argues that because the hearing on his petition for habeas corpus was not held within thirty days of his arrest, his detention was illegal and the extradition order must be invalidated. The language of the statute defeats his claim.

As noted above, § 976.03(15), STATS., permits a fugitive to be detained "for such a time not exceeding 30 days . . . as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the [governor] of the [demanding] state . . . ." *See* § 976.03(17) (allowing court to extend detention to 90 days). By its plain terms, the statute keys the thirty-day limitation to issuance of the governor's warrant. It has no reference or application to the hearing date of

---

[5] The *Gordon* court stated:

"It is uniformly recognized that a crime that has resulted in conviction remains a charge under the constitution so long as the sentence resulting from conviction is unsatisfied. . . . Consequently, a parolee is subject to extradition as a fugitive because, as a convict with an unexpired sentence, he remains criminally 'charged.' His extradition is for his original offense."

*Gordon v. Cronin*, 586 P.2d 226, 227 (Colo. 1978) (quoted source omitted).

883

any habeas corpus challenge to the extradition proceeding the fugitive may elect to file.

The plain purpose of § 976.03(15) and (17), STATS., is to permit detention of a fugitive for up to ninety days in order to provide a reasonable time for the preparation and execution of the governor's warrant, and it has been held that even in cases where the warrant fails to arrive prior to expiration of the deadline and the fugitive is released, the asylum state retains the authority to re-arrest him or her when the warrant is received. *See Echols v. State*, 810 S.W.2d 430, 431 (Tex. App. 1991); *In re Lovejoy*, 556 A.2d 79, 80 (Vt. 1988); *Commonwealth v. Storms*, 504 A.2d 329, 330 (Pa. Super. Ct. 1986); *Schumm v. Nelson*, 659 P.2d 1389, 1390 (Colo. 1983). Indeed, the Wisconsin Supreme Court, in *State ex rel. Holmes v. Spice*, 68 Wis. 2d 263, 229 N.W.2d 97 (1975), held that where, as here, the governor's warrant is properly obtained and executed, the petitioner may not be heard to challenge the validity of his or her initial arrest or detention.

> "A fugitive from justice from another state cannot urge, in opposition to proper extradition proceedings, the fact that his original arrest or detention was illegal. Once proper proceedings have been instituted, it is too late to claim that the preliminary detention was illegal."

*Id.* at 269, 229 N.W.2d at 100 (quoted source omitted). *See also Ehlers*, 188 Wis. 2d at 66-67, 523 N.W.2d at 193, where, citing *Holmes*, we stated that "once a governor's extradition warrant has been executed, the time period [under § 976.03(15)] is rendered irrelevant."

██

Lykins has not persuaded us that any aspect of his detention constitutes grounds for relief.

### III. *Lykins's Arrest on Tribal Property*

As we noted at the outset, Lykins, a member of the Apache tribe, was arrested while a customer at a gambling casino located on Ho Chunk tribal property in Wisconsin, and states have only such jurisdiction on Indian lands as Congress has seen fit to provide. The attorney general argues that a specific act of Congress, 18 U.S.C. § 1162, provides the authority for Lykins's arrest. Section 1162 was created by Public Law 280 in 1953 to provide for state jurisdiction over offenses committed by or against Indians on Indian lands:

> Each of the States . . . shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country . . . to the same extent that such State . . . has jurisdiction over offenses committed elsewhere within the State . . . and the criminal laws of such State . . . shall have the same force and effect within such Indian country as they have elsewhere within the State . . . .

In *Bryan v. Itasca County*, 426 U.S. 373, 379 (1976), the Supreme Court stated, "The primary concern of Congress in enacting [the law] . . . was with the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." And in *Negonsott v. Samuels*, 113 S. Ct. 1119, 1123 (1993), the Court recognized that a similarly worded law applicable to the State of Kansas "unambiguously" conferred jurisdiction on Kansas to prosecute all offenses committed by or against Indians on Indian lands "in accordance with state law." Another portion of Public Law 280 created 28 U.S.C. § 1360, which extends state jurisdiction to civil causes of action between Indians or to which Indians are parties, and states that such civil laws "that are of

885

general application to private persons or private property" shall be effective on Indian lands. Subsequent court decisions have interpreted the grant of jurisdiction under § 1360 as strictly limited to private civil litigation involving reservation Indians, and not in any way extending the state's civil regulatory authority to tribal lands. *Bryan,* 426 U.S. at 385, 388-90.

The test that developed under §§ 1162 and 1360 to determine state jurisdiction on Indian lands thus became whether the law sought to be applied "is criminal in nature, and thus fully applicable to the reservation under [§ 1162], or [whether it is] civil in nature, and applicable only as it may be relevant to private civil litigation in state court [under § 1360]." *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 208 (1987).

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within [§ 1162]'s grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory[6] and [§ 1360] does not authorize its enforcement on an Indian reservation. *The shorthand test is whether the conduct at issue violates the State's public policy.*

*Id.* at 209 (emphasis added).

---

[6] The Court, in *Bryan,* emphasized that the only type of civil jurisdiction granted state courts by 28 U.S.C. § 1360 was jurisdiction to "decide . . . disputes" between private persons—to " '*adjudicate* civil controversies' arising on Indian reservations . . . ." *Bryan v. Itasca County,* 426 U.S. 373, 384 (1976) (emphasis in original). Stated another way, the law limited the grant of state jurisdiction to "private civil litigation involving reservation Indians in state court." *Id.* at 385. It grants no authority to the states to exercise any civil regulatory jurisdiction.

Thus, if the law is prohibitory in nature, that is, if its intent is to prohibit acts the state believes may be inimical to the health and safety of its citizens, the state may enforce it on Indian lands under 18 U.S.C. § 1162. If, on the other hand, the law is one that is essentially regulatory—one intended to regulate acts that the state permits in certain restricted circumstances—it is a "civil regulatory" law and may not be enforced on Indian lands. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 743 F. Supp. 645, 650 (W.D. Wis. 1990).

The manner in which courts have applied these principles is instructive. In *Cabazon Band*, the court concluded that a California statute permitting bingo games under certain conditions (e.g., when operated by charitable organizations with prizes limited to $250 per game) was a civil "regulatory" law—one regulating otherwise permissible conduct—which could not be enforced on Indian lands under 28 U.S.C. § 1360. In contrast, the Court of Appeals for the Ninth Circuit held that a provision in the California Health and Safety Code which generally prohibited the possession and sale of fireworks except for a narrow class of products on certain days of the year was "criminal/prohibitory" in nature and thus enforceable against tribal members on Indian reservations under 18 U.S.C. § 1162. *Quechan Indian Tribe v. McMullen*, 984 F.2d 304, 308 (9th Cir. 1993). The *Quechan Indian Tribe* court, citing *Cabazon Band*, looked beyond the statute's regulatory "label" and reasoned that because the intent of the law's general prohibition of the sale of fireworks was to protect life and property, a valid public policy of the state, the " 'shorthand test' " of *Cabazon Band*—" 'whether the conduct at issue violates the

State's public policy' "— compelled the conclusion that the statute could be enforced on Indian lands. *Id.* at 307-08. We adopted the *Cabazon Band* test in *State v. St. Germaine*, 150 Wis. 2d 171, 442 N.W.2d 53 (Ct. App. 1989), where we held that the Wisconsin laws prohibiting driving after revocation and driving while intoxicated—and which "reflect[ed] the state's public policy that certain individuals are dangerous drivers who must be prohibited from operating . . . motor vehicle[s] to protect the health and safety of citizens"—were enforceable against Indians on tribal lands within the state. *Id.* at 175-77, 442 N.W.2d at 55-56.[7]

Lykins argues that the extradition laws are procedural in nature and thus do not meet the *Cabazon Band* test for a criminal/prohibitory law. We disagree.

As we have noted above, the purpose of the extradition clause is to enable offenders to be brought to trial as swiftly as possible in the state where the alleged offense was committed. *Michigan v. Doran*, 439 U.S. 282, 287 (1978). And because the clause's underlying intent is to preclude states from becoming sanctuaries for fugitives from justice, it articulates, in mandatory

---

[7] After his conviction, the defendant in *St. Germaine* sought relief in federal court and, on appeal, the Court of Appeals for the Seventh Circuit agreed with our reasoning in the state case, concluding:

> Congress has made it plain that Wisconsin can enforce its criminal laws on reservations. That is all Wisconsin is doing. This enforcement of . . . public policy by the imposition of criminal sanctions does not impinge upon the respected tribal "attributes of sovereignty over both their members and their territory." The tribal Indians as well as the general public are all better served by uniform enforcement of the Wisconsin driver's license law.

*St. Germaine v. Circuit Court for Vilas County*, 938 F.2d 75, 78 (7th Cir. 1991), *cert. denied*, 503 U.S. 997 (1992).

language, the concepts of comity and full faith and credit. *Id.* at 287-88.

The state statutes implementing these considerations require the governor of the asylum state to issue a warrant whenever the demanding state files proper paperwork showing that the individual has been charged with a crime in that state or is subject to an unsatisfied judgment of conviction. Section 976.03(3) and (22), STATS. Under other provisions of the Uniform Criminal Extradition Act, the asylum state may make a custodial arrest, and the individual may be maintained in custody by court order for up to ninety days to allow for service of the governor's warrant. Section 976.03(13), (14), (15) and (17).

We agree with the State that these procedures describe a law which is criminal and prohibitory in nature under the *Cabazon Band* test. The law does not permit fugitives from justice to reside in Wisconsin subject to regulation; rather, as a matter of public policy and constitutional obligation, the extradition statutes seek to bar fugitives from seeking and finding sanctuary in Wisconsin. Whether the test is stated in longhand or in shorthand, providing sanctuary for fugitives fleeing prosecution or incarceration in other states violates the public policy underlying Wisconsin's extradition laws. Under *Cabazon Band, St. Germaine* and similar cases, the statutory proscription against providing such sanctuary is criminal/prohibitory in nature and, under 18 U.S.C. § 1162, may be enforced against Indians—including Lykins[8]—on tribal lands.[9]

---

[8] We assume, without deciding, that Lykins, as an Indian—even though not a member of the Ho Chunk tribe—has standing to challenge his arrest on Ho Chunk lands. Although the State makes a cursory argument on the point which appears to relate to the sovereign interests of the Ho Chunk tribe—a

■

We conclude, therefore, that the trial court properly dismissed Lykins's habeas corpus petition.

*By the Court.*—Order affirmed.

■

question not before us on this appeal, *see* note 9, *infra*—we do not consider the issue to have been adequately briefed by the parties.

[9] Lykins argues that we should remand to the trial court for a determination whether federal legislation preempts the state extradition laws, or whether enforcement of the extradition statutes would unnecessarily infringe on the Ho Chunk tribe's right of self-governance.

It is true that there are two potential barriers to the enforcement of state laws on Indian lands: federal preemption and infringing upon the right of tribal self-government; and these concepts must be balanced against the state interests involve. *See In re M.L.S.*, 157 Wis. 2d 26, 29, 458 N.W.2d 541, 542-43 (Ct. App. 1990). That test, however, applies only in cases where there is no specific Congressional grant of authority to states (or where the state law is wholly civil in nature). Where, as we have held is the situation here, Congress has granted authority to the state to apply and enforce its criminal/prohibitory laws on Indian lands, there is no need to consider questions of pre-emption or interference with tribal sovereignty. *Quechan Indian Tribe*, 984 F.2d at 308; *Ross v. Neff*, 905 F.2d 1349, 1352 (10th Cir. 1990).