BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE ALLAN McCLAIN, SHERIFF, COUNTY OF KINGS, has requested an opinion on the following question:
Are California motor vehicle registration and driver's license requirements subject to enforcement against Indian tribal members on roads within their Indian reservation?
 CONCLUSION
California motor vehicle registration and driver's license requirements are not subject to enforcement against Indian tribal members on roads within their Indian reservation.
 ANALYSIS
We are asked whether California motor vehicle registration and driver's license requirements are subject to enforcement against Indian tribal members on roads within their Indian reservation. We conclude that they are not.
In 80 Ops.Cal.Atty.Gen. 46, 48-49 (1997), we observed that the answer to whether a given California law is applicable to a tribal member's conduct occurring on an Indian reservation would depend primarily upon the approval of Congress. The United States Supreme Court explained this principle in the landmark case ofCalifornia v. Cabazon Band of Mission Indians (1987)480 U.S. 202, 207-208:
 "The Court has consistently recognized that Indian tribes retain `attributes of sovereignty over both their members and their territory,' United States
v. Mazurie, 419 U.S. 544, 557 (1975), and that `tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States,' Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 154 (1980). It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided. . . .
 "In Pub.L. 280, Congress expressly granted six States, including California, jurisdiction over specified areas of Indian country within the States and provided for the assumption of jurisdiction by other States. In § 2, California was granted broad criminal jurisdiction over offenses committed by or against Indians within all Indian country within the State. Section 4's grant of civil jurisdiction was more limited. In Bryan v. Itasca County, 426 U.S. 373 (1976), we interpreted § 4 to grant States jurisdiction over private civil litigation involving reservation Indians in state court, but not to grant general civil regulatory authority. Id., at 385, 388-390. . . . Accordingly, when a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2, or civil in nature, and applicable only as it may be relevant to private civil litigation in state court." (Fns. omitted.)[1]
Here, we are concerned with the application of particular California statutes that require a motor vehicle to be registered and require the operator of a motor vehicle to have a valid driver's license. Specifically, Vehicle Code section 4000, subdivision (a)(1),[2] provides with respect to motor vehicle registration:
 "No person shall drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code or registered under the permanent trailer identification program, except that an off-highway motor vehicle which displays an identification plate or device issued by the department pursuant to Section 38010 may be driven, moved, or left standing in an offstreet public parking facility without being registered or paying registration fees."
Section 12500 states with respect to having a valid driver's license:
 "(a) A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code.
 "(b) A person may not drive a motorcycle, motor-driven cycle, or motorized bicycle upon a highway, unless the person then holds a valid driver's license or endorsement issued under this code for that class, except those persons who are expressly exempted under this code, or those persons specifically authorized to operate motorized bicycles or motorized scooters with a valid driver's license of any class, as specified in subdivision (g) of Section 12804.9.
 "(c) A person may not drive a motor vehicle in or upon any offstreet parking facility, unless the person then holds a valid driver's license of the appropriate class or certification to operate the vehicle. As used in this subdivision, `offstreet parking facility' means any offstreet facility held open for use by the public for parking vehicles and includes any publicly owned facilities for offstreet parking, and privately owned facilities for offstreet parking where no fee is charged for the privilege to park and which are held open for the common public use of retail customers.
 "(d) A person may not drive a motor vehicle or combination of vehicles that is not of a type for which the person is licensed.
 "(e) A motorized scooter operated on public streets shall at all times be equipped with an engine that complies with the applicable State Air Resources Board emission requirements."
Since neither section 4000 nor section 12500 is concerned with offering "Indians a forum to settle disputes among themselves" (Confederated Tribes v. State of Wash. (9th Cir. 1991)938 F.2d 146, 147), we need not consider the possible application of California's civil adjudicatory powers for purposes of Public Law 280. (See Bryan v. Itasca County (1976) 426 U.S. 373, 383-392;Doe v. Mann (9th Cir. 2005) 415 F.3d 1038, 10581-062.) Instead, the primary issue to be resolved is whether sections 4000 and 12500 constitute criminal statutes that may be applied to tribal Indians on Indian reservations pursuant to the grant of authority contained in Public Law 280. To answer that question, we apply the test set forth in California v. Cabazon Band of MissionIndians, supra, 480 U.S. 202:
 ". . . [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation." (Id. at p. 209.)
The Cabazon test for distinguishing between a criminal law and a civil regulatory law for purposes of Public Law 280 has been applied in a variety of situations. (See, e.g., Californiav. Cabazon Band of Mission Indians, supra, 480 U.S. 202 [law regulating bingo games is civil regulatory law]; Quechan IndianTribe v. McMullem (9th Cir. 1993) 984 F.2d 304 [law prohibiting fireworks is criminal law]; State v. Barros (1998)957 P.2d 1095 [law prohibiting driving while intoxicated is criminal law];State v. Warden (1995) 906 P.2d 133 [law prohibiting driving while intoxicated is criminal law].)
Here, we note that a violation of section 4000 is an infraction punishable by a fine of not more than $250. (§ 42001.8; seeDorsey v. Barba (1952) 38 Cal.2d 350, 354; Henry v. GeneralForming, Limited (1948) 33 Cal.2d 223, 227; 71 Ops.Cal.Atty.Gen. 167, 170-171 (1998).) A violation of section 12500 is a misdemeanor (§ 40000.11, subd. (b)), but it may be treated as an infraction (Pen. Code, §§ 17, subd. (d), 19.8) and does not include a mandatory fine or jail sentence. (See People v.Spence (2005) 125 Cal.App.4th 710, 720 [penalty for violating section 12500 "is not substantial" and statute "has no recidivist provisions"].)
We believe that sections 4000 and 12500 are civil regulatory laws, not criminal laws, for purposes of Public Law 280. The fact that criminal penalties may be imposed for their violation is not dispositive. (California v. Cabazon Band of Mission Indians,supra, 480 U.S. at p. 211 ["that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280"].) What is significant is that under California's motor vehicle laws, including these two statutes, the driving of a motor vehicle on the roads of the state is generally permitted, subject to various conditions including the two at issue here: (1) the vehicle must be registered and (2) the operator must have a valid driver's license.
In State v. Stone (1997) 572 N.W.2d 725, the Minnesota Supreme Court considered whether Minnesota could enforce within the boundaries of an Indian reservation state motor vehicle laws regarding (1) failing to provide motor vehicle insurance, (2) driving without proof of insurance, (3) driving with an expired registration, (4) driving without a driver's license, (5) driving with an expired driver's license, (6) speeding, (7) driving without a seat belt, and (8) failing to secure a child in a seat restraint. (Id., at p. 727.) The court ruled that these were not criminal laws for purposes of Public Law 280, but rather civil regulatory laws:
 ". . . We find the following factors to be useful in determining whether an activity violates the state's public policy in a nature serious enough to be considered `criminal:' (1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights of others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; (4) the nature and severity of the potential penalties for a violation of the law. . . .
 "The general public policy behind the state's traffic and driving laws is to protect the safety of persons and property on the roadways. . . . Since none of these laws raises policy concerns which are substantially different or heightened from the general public policy behind the driving laws, they are properly analyzed as part of the broad conduct of driving.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "Examples of traffic laws which might raise substantially different or heightened public policy concerns include Minn. Stat. § 169.121 (prohibiting drinking and driving) and Minn. Stat. § 169.13
(prohibiting both reckless and careless driving). The public policy underlying these laws is substantially heightened in comparison to the general scheme of driving laws, in that their violation creates a greater risk of direct injury to persons and property on the roadways. [citations.]
 "Having determined that the broad conduct of driving is the proper focus of the Cabazon test, we apply the test to hold that driving is generally permitted, subject to regulation. . . . Therefore, each of the laws involved in this case is civil/regulatory and the state lacks jurisdiction under Public Law 280 to enforce them against members of the White Earth Band of Chippewa for conduct occurring within the boundaries of their reservation." (Id. at pp. 730-731, fns. omitted.)
In Confederated Tribes v. State of Wash. (9th Cir. 1991)938 F.2d 146, the United States Court of Appeals for the Ninth Circuit similarly ruled that a Washington law against speeding was not a criminal law for purposes of Public Law 280. After distinguishing "offenses like reckless driving or driving while intoxicated, which remain criminal," (id. at p. 148), the court concluded that:
 ". . . the state may not declare certain infractions as civil, remove the panoply of constitutional and procedural protections associated with criminal offenses, save itself the time and expense of criminal trials, and then insist the same infraction is criminal for purposes of expanding state jurisdiction and appropriating the revenue raised through enforcement of the speeding laws. [Citation.]
 "Several cases applying the civil/regulatory versus criminal/prohibitory test support this conclusion. In Cabazon, the Court held a California law establishing misdemeanor criminal penalties for operating bingo games except in accord with specific regulations was civil/regulatory and therefore unenforceable on an Indian reservation. [Citation.] The Court concluded `in light of the fact that California permits a substantial amount of gambling activity, including bingo, and actually promotes gambling through its state lottery, we must conclude that California regulates rather than prohibits gambling in general and bingo in particular.' [Citation.] The Court rejected California's argument that high stakes, unregulated bingo was prohibited and a misdemeanor, and therefore against public policy. As it said: `[b]ut that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of P.L. 280.' [Citation.]
 "Thus, although the government is correct that speeding remains against the state's public policy, Cabazon teaches that this is the wrong inquiry. Cabazon focuses on whether the prohibited activity is a small subset or facet of a larger, permitted activity — high-stakes unregulated bingo compared to all bingo games — or whether all but a small subset of a basic activity is prohibited. . . .
 "We conclude that [the] unregulated, high-stakes bingo [considered in Cabazon] was an extreme extension of a permitted activity, it was incident to that general activity and thus lay within the ambit of that activity. Similarly, here speeding is but an extension of driving — the permitted activity — which occasionally is incident to the operation of a motor vehicle.
 "Concern for protecting Indian sovereignty from state interference prompted courts to develop the criminal/prohibitory — civil regulatory test. [Citation.] That concern leads us to resolve any doubts about the statute's purpose in favor of the Indians. [Citation.]. . . . We conclude RCW Ch. 46.63 should be characterized as a civil, regulatory law. Under it, the state may not assert jurisdiction over tribal members on the Colville reservation." (Id.
at pp. 148-149, fns. omitted.)
Consistent with the courts' holdings in the foregoing two illustrative cases, we find that the registration requirements of section 4000 and the prohibition of section 12500 are properly characterized as "civil/regulatory" laws for purposes of Public Law 280.[3] As noted above, violations of these statutory provisions are treated as, or may be treated as, infractions. Neither statute imposes mandatory fines or jail sentences for violations, and neither carries penalties for recidivism. (SeePeople v. Spence, supra, 125 Cal.App.4th at p. 720 [potential penalties for violations of these statutes are "not substantial"].) Driving without a valid license or a current vehicle registration does not, by itself, significantly threaten physical harm to persons or property, or invade the rights of others — in contrast to such behaviors as driving under the influence or reckless driving, which are prohibited by criminal laws,[4] and each of the statutes in question includes various exceptions and exemptions (see, e.g., §§ 4002-4023, 9101-9107).
Finally, we know of no "exceptional circumstances" that would allow enforcement of sections 4000 and 12500 against Indian tribal members on an Indian reservation in the absence of express congressional approval. (See California v. Cabazon Band ofMission Indians, supra, 480 U.S. at pp. 215-216; New Mexico v.Mescalero Apache Tribe (1983) 462 U.S. 324, 331-332; State v.Stone, supra, 572 N.W.2d at pp. 731-732.)
We conclude that California motor vehicle registration and driver's license requirements are not subject to enforcement against Indian tribal members on roads within their Indian reservation.
[1] As indicated in Cabazon, "Public Law 280," enacted by Congress in 1953, consists of two components: section 2 gives certain states, including California, broad jurisdiction over criminal offenses committed in Indian country (18 U.S.C. § 1162(a)), and section 4 provides the same states with jurisdiction over civil causes of action that arise in Indian country (28 U.S.C. § 1360(a)). "Indian country" includes "all land within the limits of any Indian reservation . . . including rights-of-way running through the reservation." (18 U.S.C. § 1151.) This definition applies to questions of both criminal and civil jurisdiction. (DeCoteau v. District County Court (1975)420 U.S. 425, 427, fn. 2; see California v. Cabazon Band ofMission Indians, supra, 480 U.S. at p. 207, fn. 5; 83 Ops.Cal.Atty.Gen. 190, 191 (2000).)
[2] All references hereafter to the Vehicle Code are by section number only.
[3] We note that in St. Germaine v. Circuit Court for VilasCounty (7th Cir. 1991) 938 F.2d 75, the court ruled that a state law carrying a mandatory minimum jail sentence of 60 days, as well as a fine of $1,500, for driving after a fourth revocation of a driver's license was a criminal law for purposes of Public Law 280, while acknowledging that "[t]he Wisconsin statute, which does not carry a mandatory jail sentence and fine for first offenses, might to that extent be considered merely regulatory." (Id. at p. 77.) The specific California statutes in question here are distinguishable, as discussed above, in that they do not provide mandatory fines or jail sentences. (See also § 12901.5 [peace officer may not detain or arrest a person based solely on the belief that the person is an unlicensed driver].)
[4] We believe that some state laws involving the operation of motor vehicles, including "offenses like reckless driving or driving while intoxicated" (Confederated Tribes v. State ofWash., supra, 938 F.2d at p. 148), may be deemed "criminal/prohibitory" for purposes of Public Law 280, notwithstanding the fact that driving itself is broadly permitted by the state. Furthermore, this distinction may be made even as to specifically prohibited driving activity for which the absence of a valid driver's license is an element of the offense if, as in the case of suspended or revoked licenses, the absence of a license is the result of an affirmative determination by the state that the driver in question poses a danger to others, and if mandatory criminal penalties apply. (See State v. Stone,supra, 572 N.W.2d at p. 731.) Such provisions are unaffected by our conclusion that sections 4000 and 12500 may not be enforced against Indian tribal members on roads within the Indian reservation under Public Law 280. Under California law, for example, driving while one's license is suspended or revoked is a misdemeanor and, depending on the reason for the underlying suspension or revocation, is punishable by fine or imprisonment for a first offense (§ 14601.1, subd. (b)(1)), or by both a fine and imprisonment for every offense (§§ 14601, 14601.2, 14601.5). Causing bodily injury while driving with a suspended or revoked license is also a misdemeanor, punishable by imprisonment. (§ 14601.4.) With the exception of section 14601.1 (see Pen. Code, §19.8), violations of these statutory prohibitions may not be treated as infractions under Penal Code section 17, subdivision (b). They carry misdemeanor penalties, and, except for a first violation of section 14601.1, mandatory imprisonment, with additional penalties for subsequent offenses. (See St. Germainev. Circuit Court for Vilas County, supra, 938 F.2d at p. 77.)